**Desimal Leatrice GATEWOOD, Individually and as Executrix of the Estate of Connie Mack Gatewood, a/k/a C. M. Gatewood, Deceased, Appellee,**

v.

**Mary GRIFFIN, Appellant.**

**No. 48280.**

Court of Appeals of Oklahoma, Division No. 1.

March 30, 1976.

Released for Publication by Order of Court of Appeals April 21, 1976.

Boatman & Laub, by Tom J. Laub, Okmulgee, for appellee.

Stephen W. Smith, Okmulgee, for appellant.

ROMANG, Judge:

Defendant, Mary Griffin, brings this appeal from a summary judgment granted in favor of the plaintiff.

Connie Mack Gatewood and Desimal Leatrice Gatewood were married July 10, 1939, and remained husband and wife until his death on February 19, 1974.

On December 14, 1973, Mr. Gatewood closed a joint checking account which was in their names as joint tenants with the right of survivorship, and used the funds of said account to immediately open a new checking account in his name, C. M. Gatewood, and/or Mary Griffin, his sister.

Desimal Leatrice Gatewood was appointed executrix of her husband's estate on March 15, 1974. She is the sole legatee and devisee under the will of her husband.

Mrs. Gatewood brought this action, alleging in her petition that at the time of her husband's death, there was in said checking account the sum of $1,210.54, but it had increased to the amount of $1,489.81 because of time payments being collected by the bank on Contracts for Deeds which she and her husband had made on jointly acquired and owned property. Her petition further alleges:

> "That the action of CONNIE MACK GATEWOOD, A/K/A C. M. GATEWOOD, deceased, was an attempt to make a gift during his lifetime of jointly acquired property to a third person, MARY GRIFFIN, in order to defraud the Plaintiff, as an individual, but was incomplete in that the deceased retained his joint interest and control therein during his lifetime."

And the prayer of her petition reads:

> "Wherefore, premises considered, Plaintiff, . . ., prays the Court upon hearing herein to enter an Order decreeing that said account is the property of said Estate."

Mary Griffin filed an answer admitting the creation of the second joint account, denying the other material allegations of the petition, and alleging that the joint account became her sole property upon the death of C. M. Gatewood.

Plaintiff filed a reply in the form of a denial of all allegations that were at variance with her petition.

Thereafter, both parties filed a motion for summary judgment. They stipulated that no deposit or withdrawal was ever made to or from the second joint account by Mary Griffin, and that there were eleven Contracts for Purchase for collection by the bank and the amounts collected thereunder had been deposited in the account.

The trial court entered summary judgment for the plaintiff which reads in part:

> "Now on this 27th day of February, 1975, it is the ruling of the Court that the plaintiff's Motion for Summary Judgment be granted for the reason that the decedent's, Connie Mack Gatewood, action of closing a joint account in the name of said decedent and his wife, Desimal Leatrice Gatewood, in the First National Bank and Trust Company of Okmulgee, Oklahoma, by tendering a check for the amount of said account

and immediately creating a new joint account in the names of said decedent and Mary Griffin without the consent of Desimal Leatrice Gatewood was insufficient to deprive Desimal Leatrice Gatewood or the estate of Connie Mack Gatewood of their interest in said account and a constructive trust should be imposed to return said account to the estate of Connie Mack Gatewood."

Mary Griffin has appealed and first contends that it was error to grant said summary judgment because questions of fact were in controversy. Among the various questions of fact alleged to exist, she states "that a material issue of fact existed concerning the liquidity of the estate." Also she contends there is a question of fact as to whether she attempted to defraud Mrs. Gatewood of her marital rights, and asserts that "the primary fact question which was before the court was the contribution made by Appellee towards the accumulation of the funds in (the) account." She further asserts that she "was prepared to prove that Appellee contributed nothing to the account." Mary Griffin further takes the position that "a person may make a gift of his property during his lifetime of any real or personal property which he possesses." She also asserts that Mr. Gatewood did in fact give her an undivided interest in the funds, and that she, as the surviving joint tenant, should take these funds upon his death; and that Mr. Gatewood was at least entitled to give away one-half of the joint account that he had with his wife.

48 C.J.S. Joint Tenancy § 4, page 929, reads:

"*Bank accounts.* A joint tenancy of a bank account may be terminated by the conduct or agreement of the parties. . . . a withdrawal of the entire account without the other's consent does not effect a termination of the joint tenancy, but only a change in the form of the property, . . .."

Among the many cases cited in support of the latter statement is that of *Watkins v. McComber*, 208 Okl. 352, 256 P.2d 158 (1953). Mrs. Cloonan was the grandmother of the plaintiff, McComber, and she was the mother of the defendant, Watkins. In June, 1944, Mrs. Cloonan placed building and loan stock in her and the plaintiff's name as joint tenants, with the right of survivorship. And in August, 1944, without plaintiff's knowledge or consent, Mrs. Cloonan placed the identical stock in her and the defendant's name, as joint tenants with the right of survivorship. She died in March, 1947. Plaintiff, the grandson, brought suit against the defendant, the son, seeking, inter alia, to have the stock impressed with a trust. In the opinion the court said:

"However, the defendant having full knowledge of the circumstances connected with the creation of the joint tenancy originally, and not being an innocent third party purchaser for value, took his interest in the second joint tenancy subject to plaintiff's vested right, which right may now be invoked and enforced as against the funds . . ..

\*    \*    \*    \*    \*    \*

"As between Mrs. Cloonan and the plaintiff, as joint tenants, the attempted transfer of the funds in the associations to herself and the defendant, Watkins, as joint tenants, was ineffectual and subject to the vested rights of the plaintiff to recover such funds upon tracing them into the hands or under control of the defendant as herein outlined."

And in the syllabus, the Oklahoma Supreme Court held:

"The appropriation or transfer of a joint tenancy estate in its entirety by one of two joint tenants without the other's knowledge, or consent, and for the manifest purpose of defeating the cotenant's survivorship right, is a violation of the joint tenancy agreement and is therefore void."

In *Wallace v. Riley*, 23 Cal.App.2d 669, 74 P.2d 800 (1938), the court said:

"Contrary to the canon of the common law, our courts have established the rule that, when money is taken from a joint tenancy account during the joint lives of

the depositors, property acquired by the money so withdrawn, or another account into which the money is traced, will retain its character as property held in joint tenancy like the original fund, unless a change in the character has been effected by some agreement between the parties."

In Re Will of Filfiley, 63 Misc.2d 824, 313 N.Y.S.2d 793 (1970), involved a bank account which a wife had opened in her name and her daughter's name, as joint tenants. The daughter withdrew the whole of the account on the day before the wife's death. The surviving husband sought to bring the joint bank account into the estate. In the opinion, the court said:

"A joint tenant may unilaterally 'sever' the joint tenancy to the extent of withdrawing his moiety or less than a moiety. When he does so he does not 'terminate' the joint tenancy in the sense that he does not affect the right of survivorship. The survivor, whether the withdrawer or the other joint tenant will be entitled to the remainder upon the death of either joint tenant.

"But a joint tenant may not unilaterally withdraw more than his moiety or, as usually happens, the whole fund. Such a withdrawal has no effect whatsoever.

\*　　\*　　\*　　\*　　\*　　\*

"What is meant is that the whole fund withdrawn not just the excess over the moiety keeps its character as a joint tenancy no matter into what form it is converted. The ultimate survivor whether he be the withdrawer or the other joint tenant will be entitled to the whole fund withdrawn not just the excess over the moiety.

\*　　\*　　\*　　\*　　\*　　\*

". . . [T]he whole transaction is simply treated as a nullity.

"This is the legal nature of the joint tenancy. In the main the cases follow the joint tenancy concept.

"Before discussing the cases, two things should be noted.

"First, the cases concerning depositor-bank relationships are not pertinent. The provision in the statute authorizing the bank to pay 'to either during the lifetime of both' is for the protection of the bank and irrelevant to the rights of the depositors between themselves. Such a right to withdraw the whole fund is patently inconsistent with the incidents of a joint tenancy.

\*　　\*　　\*　　\*　　\*　　\*

"Second, a true joint tenancy like any other status created by agreement may be altered, terminated or destroyed by agreement of both joint tenants.

\*　　\*　　\*　　\*　　\*　　\*

"As has been discussed, under the joint tenancy concept the survivor necessarily takes all no matter what the circumstances. If the decedent joint tenant was the 'wrongful' withdrawer, the survivor takes the whole fund by reason of the nullity of the transaction.

\*　　\*　　\*　　\*　　\*　　\*

"In short, after a right of survivorship has vested, there should in legal theory never be a recovery of half the fund or the excess over the moiety. *The survivor must take all.*" (Emphasis theirs.)

We conclude under the undisputed material facts in the instant case, that Mrs. Gatewood as the survivor on the first joint account is entitled to take all funds that Mr. Gatewood put or caused to be placed in the second joint account with his sister; and that the trust impressed on the second joint account should be for the benefit of Desimal Leatrice Gatewood, individually, as the surviving joint tenant on the first joint account.

The judgment of the trial court is accordingly modified, and as modified it is affirmed.

AFFIRMED AS MODIFIED.

REYNOLDS, P. J., concurs.