Alma Jean **FORTUNE**, an individual, Appellee,

v.

**CITY NATIONAL BANK & TRUST COMPANY, Oklahoma City, Oklahoma, Appellant.**

No. 56568.

Court of Appeals of Oklahoma, Division No. 2.

May 10, 1983.

As Corrected May 19, 1983.

Rehearing Denied July 7, 1983.

Certiorari Denied Oct. 18, 1983.

Released for Publication by Order of the Court of Appeals Oct. 21, 1983.

James Vogt, Fred Morgan, Reynolds, Ridings & Hargis, Oklahoma City, for appellant.

F.H. Wright, Oklahoma City, for appellee.

BOYDSTON, Judge.

Defendant Bank appeals from judgment in favor of Customer who alleged Bank converted funds by wrongfully paying proceeds of a joint tenancy account to the other cotenant. Based on our review of the record, we find the judgment to be contrary to law and not supported by competent evidence. We reverse.

This case of legal cognizance was tried to the court after the parties waived jury trial. The facts are undisputed. In June 1959 Customer was made a joint tenant signatory on a checking account together with Customer's Mother and Stepfather. In February 1970 the same three persons were made joint tenants on a savings account. Mother died in November 1979. Customer never contributed to nor exercised control over the accounts during Customer's Mother's lifetime.

Three days after Mother died, Customer demanded that Bank transfer all funds into her personal account, which Bank was in the process of doing when she disclosed that Mother had died. Bank then reversed the partially completed transaction, restored the accounts, and advised Customer that state tax laws require an Oklahoma Tax Commission clearance before funds could be disbursed. Later that day Stepfather made demand on Bank for the money and was also refused. He immediately hired an attorney who obtained a tax release from the Commission and demanded that Bank transfer all funds to Stepfather's personal account. Stepfather then authorized Mr. White, Customer's son, as a joint tenant on the account.

When these facts became known to Customer, she sued the Bank, alleging conversion of the funds. Next she sued Bank, Stepfather, and White in a separate suit and eventually obtained a restraining order preventing further withdrawals from the account, which by then had dwindled to about half its initial value.

Customer's grounds for suit against Bank were alleged to be:

"a. [T]urning the funds in question [over] to an adverse claimant without ap-

propriate process ... from a court of competent jurisdiction.

"b. Turning over the accounts ... to a third person without the benefit of an appropriate signature of a valid depositor."

The two cases were assigned to separate judges and the instant case, solely against Bank, proceeded to trial first. Trial court held that (1) a joint tenant is entitled to half the proceeds of such an account as a matter of law, and (2) Bank had converted the funds by paying them to Stepfather after being on actual notice that his claim was "adverse" to that of Customer. The judge further held he could not make a final judgment until the other suit had been adjudicated because the issue of who *actually* owned the funds, as between the surviving cotenants, had not been decided in an adversary proceeding. He therefore delayed final judgment in the case pending trial of the second suit.

Shortly thereafter Customer dismissed the other suit and demanded that the court finalize the judgment in the principal case. In a belated, futile attempt to bring all parties before the court and finally resolve the dispute, Bank then joined Stepfather and White as third party defendants. They answered that the court had already prejudiced their rights by a merit trial. They claimed all of the funds by right and correctly asserted that they are not bound by the judgment, not having been parties to the suit at the time of trial. The court then finalized the judgment and, for whatever it is worth, reserved the third party action (Bank vs. Stepfather and White) for later adjudication. The court declared its judgment is predicated solely on equitable principles.

█ Trial court committed at least three errors. The first was holding as a matter of law that a joint tenant is automatically entitled to half the proceeds of a joint account. Joint tenants each presumptively possess the whole of the property at the same time, but actual ownership is a question of intent. *See Alexander v. Alexander*, Okl., 538 P.2d 200 (1975); *Shackelton v.*

*Sherrard*, Okl., 385 P.2d 898 (1963) (joint tenancy deed); *Isenhower v. Duncan*, Okl. App., 635 P.2d 336 (1981). The right to the funds, as between the joint tenants, has yet to be litigated, but that does not prevent disposition of Bank's liability in the instant action.

The second error, if the court intends to resolve the dispute, is in refusing to consolidate the two cases, because Stepfather is a necessary party.

Title 12 O.S.1981 § 236, states in part:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

Third, Bank argues that it was left holding a $17,445.89 bag for a transaction which gained it nothing: if trial court is correct, regardless of how Bank handled the transaction, it is in legal jeopardy. It would have been a violation of state banking and tax laws to have honored Customer's first transfer request, and it would have been a breach of contract to have refused or delayed Stepfather's demand after the tax impediment had been removed. Title 68 O.S.1971 § 812, provides in part:

"No ... bank ... shall deliver or transfer ... [assets] to the ... joint survivor ... of ... decedent ... unless notice of the time and place of such intended transfer be served upon the Tax Commission at least ten (10) days prior to the said transfer ... unless the Tax Commission consents thereto in writing .... Failure to serve such notice ... shall render such ... bank ... liable for the payment of the tax ...."

Under these circumstances, if trial court's judgment is allowed to stand, Bank's choices are between a statutory violation and a breach of contract.

Customer pleaded and relied on Bank's legal duty owed her by reason of her being a depositor. Although the case was plead-

ed, tried, and defended on legal principles, trial court made its judgment based on equitable grounds, which we hold do not apply where, as here, Bank's duty is prescribed by statute and by contract. Customer claims that Bank violated Title 6 O.S.1981 § 905, which provides in part:

> "Notice to any bank ... of an adverse claim to a deposit ... shall not be effectual to cause said bank ... to recognize said adverse claimant unless said adverse claimant shall also ... procure ... appropriate process against said bank ... from a court of competent jurisdiction ...."

Customer argues that Stepfather is an adverse claimant to the funds and that Bank should not have "turned the funds" to him without a proper court order. The argument is simplistic, because it logically dictates that Customer's demand also be classified as adverse to Stepfather's, and to the same extent, in which case Bank would assume the same risk by honoring or not honoring either demand. Such a result would require Bank to either sue or be sued every time a private dispute between cotenants leaked into public knowledge. Every withdrawal demand by a cotenant would carry with it an unreasonable risk on the part of Bank that an ownership dispute existed and that some knowledge of the dispute might be attributable to Bank.

More importantly, Customer wholly failed to prove a prima facie case of conversion. The supreme court held, in *Benton v. Ortenberger*, Okl., 371 P.2d 715 (1962), in syllabus one:

> "In an action for damages for conversion the burden of proof is on the plaintiff to prove every fact essential to his right to recover. He must show title or ownership to the property involved in himself; must show a conversion of the property involved *by proving some affirmative wrongful act,* and must prove the damages sustained by him." (emphasis added)

■ The only possible basis for the "wrongful act" is an alleged violation of 6 O.S.1981 § 905. However, this argument assumes that Stepfather, because he demanded the same funds Customer claimed, is an "adverse claimant" within the meaning of the statute. We hold he is not. It is undisputed that both parties, as joint tenants, have the same legal status, which affords them equal, unlimited access to the account. See 48A C.J.S. Joint Tenancy § 23 (1981). Each party, therefore, is owed the same legal duty by the Bank. The joining together of individual financial interests into a joint tenancy creates an independent entity—a unit. This legal unit remains a unit until properly terminated. Third parties contracting with the tenancy have the right to deal with it as such and cannot have their duties informally modified or abrogated by reason of intratenancy strife. Where parties have equal legal rights, the exercise of such rights cannot be adverse to the other parties as a matter of law.

■ The Bank had an absolute duty to honor the demand of any one of the tenants to the funds. When Customer initially demanded the funds, Bank was temporarily prohibited from honoring the demand because of the superior right of the State of Oklahoma to collect taxes from the fund. When Stepfather made demand after the statutory impediment was removed, Bank had no choice but to comply with the request. Bank simply acted in conformity with the contractual obligation the cotenants themselves had agreed to, and such an act cannot form the basis for a cause of action against Bank.

Reversed and remanded with directions that judgment be entered in favor of Bank. Costs of appeal are taxed against Customer.

BACON, P.J., and MEANS, J., concur.