Present:  All the Justices

MARK STEVEN JAMPOL,
EXECUTOR OF THE ESTATE OF
MARY FRANCES MAROIS, DECEASED
                        OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 990334                    January 14, 2000

MARY VIRGINIA FARMER, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    H. Thomas Padrick, Jr., Judge

     In this banking and finance case, the controversy is over

ownership, following a depositor's death, of several

certificates of deposit.

     Appellant Mark Steven Jampol, executor of the estate of

Mary Frances Marois, deceased, filed a bill of complaint, later

amended, seeking guidance to determine the ownership of four

certificates of deposit (CDs) issued in Virginia Beach to Mrs.

Marois as "Depositor" by Wachovia Bank (formerly Jefferson

National Bank).  The executor had taken possession of the CDs

following the decedent's death; she had been the sole owner of

the instruments.

     Appellees Mary Virginia Farmer (the decedent's daughter) as

well as Marietta Elizabeth Farmer Marsten and Laureen Frances

Farmer (the daughter's children) were parties defendant in the

bill.  Also named as defendants, but not appearing on appeal,

were the decedent's brother and three other grandchildren.

Appellee Wachovia Bank was added as a defendant in the amended bill.

The pleadings in the cause raised the question whether the estate, on the one hand, or the daughter and the grandchildren, on the other hand, owned the certificates. The dispute was generated because the percentages of the decedent's funds passing to her beneficiaries were materially different under her will than under certain of the CDs.

Following referral, a commissioner in chancery considered testimonial and documentary evidence during two hearings. In his report, the commissioner recommended that the chancellor enter a decree establishing the estate's ownership of the certificates.

Subsequently, the chancellor sustained exceptions to the commissioner's report that were filed by the decedent's daughter and her children. In a November 1998 final decree, the trial court ruled that the estate had no ownership interest in any of the CDs and directed the bank to pay the proceeds to the daughter and the grandchildren. The executor appeals.

The facts are undisputed. On October 11, 1994, the bank issued four, five-year CDs to the decedent. Three of the CDs were in the amount of $33,333.34 each and the fourth was in the amount of $5,000.

2

Typed on the face of the printed-form CDs were the names of P.O.D. payees. A "P.O.D. payee" is "a person designated on a P.O.D. account as one to whom the account is payable on request after the death of one or more persons." Code § 6.1-125.1(11). A "P.O.D. account," as pertinent here, is "an account payable on request to one person during lifetime and on his death to one or more P.O.D. payees." Code § 6.1-125.1(10).

The payee on the first CD was the decedent's daughter. The payee on the second and third CDs, respectively, was each of the daughter's children. The payees on the fourth CD were the three other grandchildren.

Some time after issuance of the original CDs, the decedent lost or misplaced all four certificates. The decedent went to the bank in person and the bank reissued the certificates without the P.O.D. designations. On October 30, 1995, the decedent again went to the bank and reported that the reissued CDs had been lost or misplaced. The bank then reissued the certificates that are at issue here, without any P.O.D. designation.

In each instance, the replacement certificates showed the same amount, the same account number, the same issue date, the same maturity date, and the same rate of interest as the original certificates. The replacements, however, carried different serial numbers from the originals.

At the time of the 1995 reissuances, the decedent executed four form affidavits acknowledging to the bank receipt of "a duplicate or replacement for the original certificate described below."  Described "below" in each instance was the first reissued certificate.

The decedent also signed the face of each CD on a line adjacent to her taxpayer identification number and beneath a paragraph labeled "TIN Certification."  However, the record contains no document signed by the decedent directing the bank to remove the P.O.D. beneficiaries from the certificates.

The evidence showed that during the period from October 1994, when the original CDs were issued, until her death in September 1997, the elderly decedent was forgetful and often misplaced such items as important papers, checkbooks, and her safe deposit box key.  The family had a "close" relationship, and her daughter saw her "almost every day."

Bank employees testified about the normal procedure used when a CD is lost or misplaced.  An affidavit is obtained from the depositor and a replacement certificate, ordinarily an exact duplicate of the certificate it replaces, is issued.  If either the interest rate or the dollar amount is to be changed, the certificate is cancelled and a new certificate, not related to the prior one, is issued.

If, however, the purchaser of the certificate tells the bank employee to omit a P.O.D. provision, that fact is not documented and the employee simply issues the replacement certificate without the P.O.D. provision.

On appeal, as in the court below, the daughter and her children (collectively, the daughter) rely upon Code § 6.1-125.6. That statute deals with rights of survivorship for various accounts, including P.O.D. accounts. It states that such rights "are determined by the form of the account at the death of a party," the original payee in this case. See Code §§ 6.1-125.5(B)(2) and -125.1(7).

Section 6.1-125.6 also provides:

"This form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime."

The trial court adopted the daughter's argument that, under § 6.1-125.6, the P.O.D. accounts could only be changed to non-P.O.D. accounts if the decedent, during her lifetime, signed a written order to the bank requesting that the bank change the form of the account or vary payment of the account. Accordingly, the trial court, in sustaining the exceptions, ruled "that the mere signing by the Decedent of the replacement

5

certificates issued because the original certificates of deposit were lost did not constitute a 'written order [. . .] to change the form of the account' as required by . . . § 6.1-125.6." Thus, the chancellor held that the P.O.D. payees on the original CDs were entitled to payment of the proceeds of the second replacement CDs. This was error.

The standard of review to be applied under these circumstances is settled. When a chancellor has disapproved a commissioner in chancery's report, we must determine whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the chancellor. Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984); First Nat'l Bank of Martinsville v. Cobler, 215 Va. 852, 854, 213 S.E.2d 800, 802 (1975).

The foregoing statute makes clear that a determination of the survivorship rights under a certificate of deposit begins with an examination of "the form of the account at the death of" the owner. In the present case, the CDs at issue contained no P.O.D. provisions. Thus, according to the instruments, the decedent was the owner.

However, prior certificates, which the certificates at issue replaced, contained P.O.D. designations. Nevertheless, and contrary to the daughter's argument and contrary to the trial court's ruling, these P.O.D. provisions will not be read

6

into the present certificates to change the terms existing upon the decedent's death.

We hold the language of § 6.1-125.6 does not mandate that a change in the terms of a CD must be made with a writing. Rather, the statute merely provides that the form of the account "may" be altered by a written order, not that the form "shall" be so altered.

Nothing in the statute prevents a depositor or owner of such a CD from accomplishing a change of terms by appearing in person at the financial institution and orally requesting the change. Indeed, the procedures in place at Jefferson National Bank when these certificates were reissued required no writing to change a P.O.D. designation.

However, an owner may accomplish a change in a CD's terms without appearing in person at the financial institution. In such a situation, the owner may submit a written order requesting the change if the owner signs the order, if the order is received by the bank during the owner's lifetime, and if the owner does not countermand the order by another writing. This is not such a case.

The record is silent about the discussion between the decedent and bank employees both at the time the first replacement CDs were issued, which did not carry P.O.D.

designations, and at the time the second replacements were issued, which also did not provide for P.O.D. beneficiaries.

As the commissioner pointed out, "Whatever we may guess, or think, or speculate, or believe, there is simply no evidence of a mistake by the bank or of Mrs. Marois being of a mental state, or capacity, that she would be unable to decide to have the POD provisions removed by requesting that action of the bank employee when requesting replacement certificates. . . . Given that all of the parties concerned were members of her close family, it would be as logical to make the change as it would have been to leave things as they were."

In sum, as the commissioner found, the record is devoid of evidence that the decedent intended to leave the certificates unchanged, and the burden to prove this fact was upon those who challenged the form of the accounts as they existed at her death.

Accordingly, we conclude that the trial court erred in disapproving the commissioner's report. Thus, the judgment below will be reversed, and final judgment will be entered here decreeing the estate's ownership of the instruments in question.

Reversed and final judgment.