Present:  All the Justices

SUSAN FREIER CAINE

v.  Record No. 002615     OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 14, 2001
NATIONSBANK, N.A.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
F. Bruce Bach, Judge

In this appeal, we consider whether a financial institution breached its statutory or contractual duties when it allowed one party to a joint account to add unilaterally another party to the account.

Because the trial court decided this case on demurrer, we will state as true all material facts alleged in the motion for judgment.  Robinson v. Matt Mary Moran, Inc., 259 Va. 412, 414, 525 S.E.2d 559, 561 (2000).  In May 1989, Dr. Andrew A. Freier opened a joint checking account in his name and that of his daughter, Susan Freier Caine, at Sovran Bank, N.A., the predecessor to NationsBank, N.A. (the bank).  The signature card, signed by both parties, indicated that survivorship rights attached to the account.

In 1998, when Dr. Freier's health was deteriorating, his wife, Amy Kelly Freier, sought to be added to the account to allow her to pay bills.  Although told by a bank employee that the signatures of all parties to the account would be required, Mrs. Freier returned a new signature card to the

bank which identified Caine, Dr. Freier, and Mrs. Freier in the title of the account, but contained the signatures of only Dr. and Mrs. Freier.

Upon receipt of the new signature card, the bank's branch manager visited Dr. Freier at his home to discuss the card and concluded that Dr. Freier did not intend to remove Caine from the account. The manager asked Dr. Freier to again sign the signature card, which he did on January 14, 1998. The bank determined the new signature card was sufficient to add Mrs. Freier to the account. From January 2 through February 3, 1998, Mrs. Freier wrote thirty-five checks totaling $100,181.13 on the account, including one check for $75,000. This check was written, cashed, and deposited to her own account on January 27, 1998, the day Dr. Freier died.

Caine filed a motion for judgment against the bank seeking $100,181.13 plus interest, asserting that the bank breached its contract with her when it recognized Mrs. Freier as a party to the joint account.[1] The trial court sustained the bank's demurrer, holding that Code § 6.1-125.6 authorized the "unilateral addition of a new owner to a multiple-party account." On appeal, Caine asserts that neither Code § 6.1-125.6 nor the joint account's contract terms authorized Dr.

Freier to add Mrs. Freier to the account without Caine's consent.

The trial court's decision was based on its construction of Code § 6.1-125.6. That statute provides:

> The provisions of § 6.1-125.5 as to rights of survivorship are determined by the form of the account at the death of a party. This form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

Caine argues that, as applied to an existing joint account with survivorship, the plain meaning of the phrase "the form of the account" refers to whether the account is one with or without survivorship rights. Thus, Caine asserts that the ability to change "the form of the account" unilaterally pursuant to Code § 6.1-125.6 is limited to changing the survivorship rights attached to a joint account. We disagree.

Code § 6.1-125.5 sets out three categories of multiple-party accounts – joint accounts, P.O.D. accounts, and trust accounts – and details the specific survivorship rights of each and the conditions under which such rights attach. Code § 6.1-125.6 states that the "form" of the account on the date

---

[1] Caine's motion for judgment also contained an alternative claim that was voluntarily dismissed with

3

of a death of one of the parties is the operative "form" for determining which of the survivorship rights established in Code § 6.1-125.5 applies.  The word "form" is not otherwise defined, but in this context it refers to the type of multiple-party account and is not limited to whether survivorship rights attach to the account.[2]  Therefore, the trial court was correct when it rejected Caine's position that Code § 6.1-125.6 limits the "form" of the account "to the characterization of an account as being with or without survivorship provisions."

However, in determining the effect of Code § 6.1-125.6, the trial court did not consider our decision in Jampol v. Farmer, 259 Va. 53, 524 S.E.2d 436 (2000).[3]  In Jampol, we considered whether certain P.O.D. accounts had been effectively converted to non-P.O.D. accounts.  We held that the language of Code § 6.1-125.6 regarding written notification of such a change in the form of the account merely prescribed a permissive method that a party could use to alter the form of the account.  Id. at 58-59, 524 S.E.2d at

_____

prejudice and is not at issue in this appeal.
      [2] We also note that rights of survivorship may be affected by "clear and convincing evidence" of intent and such evidence is not restricted to "the form" of the account.  Code § 6.1-125.5.
      [3] The trial court's holding was rendered less than one month after the decision in Jampol and the case was not discussed or cited by either the parties or the court.

4

439.  Thus, the language referring to a unilateral change in the account form was not the source of that authority, but rather one means of exercising such authority.  Therefore, the trial court's holding in this case that Code § 6.1-125.6 "authorizes the unilateral addition of a new owner and sets forth the method by which this change must be made" is incorrect.

Jampol is not dispositive of the issues in the instant case, however.  First, adding a party to an existing joint account is not strictly a change in the "form" of the account.  Furthermore, in Jampol, there was no challenge to the ability of the party to change the form of the accounts; the dispute was between individuals claiming an interest in the proceeds from the accounts at issue.  Here, the claim is against the financial institution for improperly accepting the change in the form of the account, not against another individual regarding competing claims to the proceeds of the account.  Therefore, the question remains:  is a financial institution liable to a party to a joint account for recognizing a third party to the joint account added without the consent of all parties to the account?

Resolution of this issue requires examination of relevant statutory and contractual provisions.  The contract between the bank and the parties to the joint account in this

case consists of the Retail Signature Card and the Rules and Regulations Governing Retail Accounts. These documents do not expressly address the addition of a party to an existing joint account. However, the contract does provide that "[e]ach owner appoints all other owners as his or her agent to endorse, deposit, withdraw and conduct business for the account." (Emphasis added). The bank argues that this agency appointment is "broad in scope" and together with the Act "must be construed to include the addition of a party to the account." Conversely, Caine argues that the phrase "conduct business for the account" refers only to "ministerial" and "transactional" matters and does not extend to altering the parties to the account.

The contract is subject to Chapter 2.1 of Title 6.1, Multiple-Party Accounts, Code §§ 6.1-125.1 to 125.16 (the Act), and thus cannot contravene the provisions of the Act. Fleming v. Bank of Va., 231 Va. 299, 305, 343 S.E.2d 341, 344 (1986). Although the Act does not expressly provide the method by which a party may be added to a joint account, neither does the Act forbid a party to an account from unilaterally adding another party to the account. Both the Act and the contract afford the financial institution broad protection from liability for carrying out the requests of a party to a joint account relative to that account while also

6

vesting a party to the joint account with extensive powers to deal with the account without the concurrence of other parties to the account.  These dual provisions, broad authority to act and protection of the financial institution, further the policies underlying the purpose of the Act.  See Barbara M. Rose, Legislative Comment, Multiple-Party Accounts:  Does Virginia's New Law Correspond with the Expectations of the Average Depositor?, 14 U. Rich. L. Rev. 851, 859-60 (1980) (stating that the Act protects financial institutions and leaves litigation of disputes over the legitimacy of actions taken to the parties to the account).

For example, the Act authorizes financial institutions to pay all sums in a joint account on request of any party to the account, regardless of the parties' beneficial ownership interests in the account.  Code §§ 6.1-125.9 to -125.10.  In the absence of written notice to the contrary, such payments may be made without any resulting liability to the financial institution.  Code § 6.1-125.13.  Similarly, Paragraph 7 of the Rules and Regulations Governing Retail Accounts provides that funds in the joint account may be withdrawn by any party to the account and "will be a complete release of the Bank for any payment so made."

Like the contract, the Act also imposes an agency relationship on parties to a joint account.  The Act provides

that each party to an account acts as "agent in regard to the ownership interest of the other party." Code § 6.1-125.15:1. Although directed to a party's ownership interest in the account, the Act's imposition of an agency appointment is consistent with affording a party to such an account broad powers over the account.

It is clear that under both the contract and the Act, actions by a party to a joint account, whether taken unilaterally or as an agent for another party to the account, can significantly impact the rights of such other parties. Thus, a contractual provision recognizing or authorizing the unilateral addition of a party to a joint account directly or through an agency relationship is consistent with the purposes of the Act.

Considering the contractual agency provisions in the context of the Act and the entire contract, we find no support for limiting the authority granted to one party to "conduct business for the account" on behalf of another party to ministerial acts as Caine suggests. This provision is sufficiently broad so as to include the ability of one party to the account to act as the agent of other parties to the account when adding a new party to the account.

Accordingly, we conclude that the bank did not breach its contract with Caine in recognizing Mrs. Freier as a party to

8

the joint account based on the signature card executed by Dr.

Freier on January 14, 1998.  Therefore, for the reasons

expressed in this opinion, the judgment of the trial court

will be affirmed.

Affirmed.