2006 OK CIV. APP 7

In the Matter of the ESTATE
of Glen Z. GREER, Jr.

David A. Greer, Plaintiff/Appellant,

v.

Lorenda Greer Stetler,
Defendant/Appellee,

and

Bank of Oklahoma, N.A., Defendant.

No. 101,862.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Oct. 19, 2005.

Certiorari Denied Jan. 17, 2006.

Charles M. Fox, Tulsa, OK, for Plaintiff/Appellant.

Randall E. Rose, Robyn Owens, The Owens Law Firm, P.C., Tulsa, OK, for Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶1 Plaintiff/Appellant David A. Greer (Son) appeals the trial court's orders granting summary judgment in favor of Defendant/Appellee Lorenda Greer Stetler (Daughter), and denying Son's motion for new trial in Son's action for partition of a joint bank account[1] following the death of the account's owner, Glen Z. Greer, Jr. (Father). We affirm.

¶2 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled

to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶3 Father and his late wife established the subject account with Defendant Bank of Oklahoma (Bank) to hold certain municipal bonds in safekeeping. Daughter and Son agree that after Father's wife died, in 1984, Father added Daughter's and Son's names to the account with the designation "JTWROS." In 1998, Bank removed Son's name from the account. Daughter and Son disagree as to whether Father or Daughter directed Bank to remove Son's name from the account. However, the undisputed evidence from Bank is that Father authorized removal of Son from the account.

¶4 After Father's death, Son petitioned for determination of the ownership of the account and for partition of the account between Son and Daughter. Daughter answered, denied liability, and asserted she was entitled to the account as the surviving joint tenant. Bank also answered.

¶5 On November 27, 2002, Daughter moved for summary judgment, submitting as supportive evidence, her own affidavit, a letter she wrote to Bank representative Mike Steinmetz (Banker), Banker's deposition, and corporate documents of a family company. In her affidavit, Daughter stated that on May 26, 1998, Father called her and told her to send a letter to Banker advising him to remove Son as a signer on all accounts at Bank. The letter Daughter sent to Banker is included in the record and it states: "As per instructions from [Father], [Son] is to be removed as a signer on any existing accounts at [Bank]. Please confirm this through [Father] in Corpus Christi." In her affidavit, Daughter stated Father also directed her to advise all company vendors that Son no long-

1. Son's Petition alleged he owned an interest in one named account, as well as others which he was unable to identify. The pleadings primarily address the one named account and we will refer to the disputed property as "the account."

er had authority to contract on behalf of the company, and she sent a letter to that effect to all vendors.

¶ 6 Banker testified he contacted Father by phone, while Father was in a hospital in Corpus Christi, and in person, after Father returned to Tulsa. He said Father instructed him to remove Son from all existing accounts. Banker testified that when he visited Father, Father "went into more detail about his distrust of his son and he felt at that point that until [Son] were to get some professional help that he really wasn't welcome back in the company's employment or on any of the accounts that had financial assets in them." He said the money was Father's money and Daughter and Son were not to take the money.

¶ 7 The corporate documents showed that in 1986, Father was shareholder, director, and president of the company, Son was director and vice-president, and Daughter was director and secretary-treasurer. In 1987, the shareholders appointed Father and Daughter as directors, and the directors appointed Father as president and Daughter as vice-president and secretary. The directors appointed the same officers in 2000.

¶ 8 Son filed his response December 27, 2002. He submitted his own affidavit stating, on information and belief, that Daughter removed Son's name from the accounts without his or Father's knowledge. He submitted Oklahoma Tax Commission records showing he remained as vice-president of the company until July 1, 2001. Son argued his evidentiary materials established a substantial controversy as to material facts.

¶ 9 The trial court consolidated Son's action with Father's probate matter April 21, 2003. Bank filed a motion for summary judgment May 9, 2003. The trial court heard both motions for summary judgment December 9, 2003. Son's attorney failed to appear. On December 19, 2003, a new attorney entered an appearance for Son and moved to substitute counsel and extend the time to allow supplementation to the brief in re-

sponse to Daughter's motion for summary judgment. Son filed the supplemental brief without leave of court February 6, 2004, and filed his own motion for summary judgment February 6, 2004. Daughter and Bank objected.

¶ 10 After a hearing July 1, 2004, the trial court granted Daughter's and Bank's motions for summary judgment in journal entries filed July 2, 2004. In the order ruling on Daughter's motion for summary judgment, the trial court found there were no material facts in dispute, granted the motion, "dismissed" Son's petition, denied Son's request for substitution of counsel as not timely, and reserved the issue of attorney fees and costs.

¶ 11 On July 9, 2004, Son moved for new trial, to vacate, or for rehearing, arguing *Gatewood v. Griffin,* 1976 OK CIV APP 19, 549 P.2d 829, was controlling as to whether his joint tenancy in the accounts had terminated without his knowledge or consent. The trial court denied his motion February 7, 2005. Son appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup.Ct. R. 1.36, 12 O.S.2001, Ch. 15, App. 1 (amended by order of December 1, 2003).[2]

¶ 12 In the District Court and on appeal, Son's argument is that when Father placed Son's name on the account along with Father's and Daughter's names, Father gave Son an irrevocable joint tenancy interest which Son continued to own after Father ordered Son's name removed from the account. In 1945, the Legislature gave statutory recognition to joint tenancies by enacting the statute now codified at 60 O.S.2001 § 74. That section provides in part,

A joint interest is one owned by several persons in either real or personal property in equal shares, being a joint title created by a single instrument, will or transfer when expressly declared in the instrument, will or transfer to be a joint tenancy, or as between husband and wife a tenancy by entirety or joint tenancy as the grantor

---

2. Although Son attached the order granting summary judgment to Bank to his petition in error, he did not include Bank's motion and his response in the record on appeal. We will confine

our review to the issues presented by the record on appeal. *Wofford v. Mental Health Services,* 1997 OK 116, 946 P.2d 1149, 1152.

may elect, or when granting or devising to executors or trustees as joint tenants. . . .

Such joint tenancy or tenancy by entirety may be created by transfer to persons as joint tenants or tenants by entirety from an owner or a joint owner to himself and one or more persons. . . .

In the absence of a "written instrument expressly declaring the relationship," in accordance with the statute, joint tenancies may be created at common law where the parties intentionally create the essential elements of joint ownership and survivorship. *Raney v. Diehl*, 1971 OK 28, 482 P.2d 585, 590. Those elements include an intent on the part of the donor to give such an interest and an act by the donor sufficient to constitute an actual or symbolic delivery of the gift.[3] *Green v. Comer*, 1943 OK 227, 193 Okla. 133, 141 P.2d 258, 262.

¶ 13 Joint accounts in financial institutions have been problematic for the courts. *Baker v. Baker*, 1985 OK CIV APP 35, ¶ 11, 710 P.2d 129, 132. In *Baker*, the Court stated,

Unlike other types of property where parties can readily choose the type of ownership which fits their intent and personal needs, banking institutions offer limited choices of ownership to customers. The customer is most generally presented with a choice of accounts fashioned by the financial institution and designed to protect its own interests rather than to define the rights and actual ownership of depositors. Often the printed forms prepared by the financial institution and signed by the depositors do not reflect the true intent of the owners, but are merely used for convenience.

*Id.* at ¶ 20, 710 P.2d at 133. Each joint tenant in the account is presumptively entitled to the entire amount. *Id.* at ¶ 12, 710 P.2d at 132. The financial institution has the absolute duty to honor the demand of any one of the tenants to the funds. *Fortune v. City Nat. Bank & Trust Co.*, 1983 OK CIV

APP 30, ¶ 17, 671 P.2d 69, 72. However, *actual ownership of the funds*, as opposed to the right of possession, *is a question of intent.* *Id.* at ¶ 8, 671 P.2d at 71 (emphasis added). As noted in 10 Am.Jur.2d Banks and Financial Institutions § 672 (citations omitted):

Funds belonging primarily to one depositor

Where money belonging to one person is deposited to the account of himself and another, or where money is deposited by the owner to his own account and it is changed to the account of himself and another, the relation thereby created depends primarily upon the intention of the depositor. It may be that such deposit is made for the mere convenience of withdrawals, with no intention of passing title from the depositor; or it may be that the intention was to create a joint interest in the other depositor either presently or at the death of the depositor.

¶ 14 The intent of the party making the deposit is controlling. *Dyer v. Vann*, 1961 OK 41, 359 P.2d 1061, 1063. The factors the court should consider in determining the grantor's intent to create a joint tenancy with right of survivorship were summarized in *Raney v. Diehl*, 1971 OK 28, 482 P.2d 585, 591:

1. The owner's unqualified expression of intention to create the relationship at that time;

2. Establishment of account in the form advised by an officer of the depository after owner's inquiry concerning manner and means of accomplishment;

3. Accessibility to both parties after creation of account;

4. Creation of account so that use at discretion of either joint tenant is permissible;

5. Exercise of possessory rights by either joint tenant before survivorship vests.

*Watkins v. McComber*, 1952 OK 422, 256 P.2d 158. Such an action does not terminate the joint tenancy, but only changes the form of the property. *Gatewood v. Griffin*, 1976 OK CIV APP 19, 549 P.2d 829, 831 (citing 48 C.J.S. Joint Tenancy § 4, p. 929).

**3.** If it is shown the donor intended a gift of an ownership interest in an account held in actual joint tenancy with right of survivorship, one joint tenant may not defeat the other's survivorship right by transferring the entire joint tenancy estate without the other's knowledge or consent.

The undisputed facts of this case show that Father was the owner of the account funds and maintained control of the account at all times. Banker testified that Father expressed his intent that Son and Daughter not have access to the money. The banker also testified "(t)hat was (Father's) money and (Daughter) and (Son) were not to take the money." Banker explained that statement was more than his opinion, it was what he had learned from several years of working with this family. After the Bank received the letter from Daughter indicating Father's instructions to remove Son's name as a signer on any accounts, Banker contacted Father to confirm the instructions. Father stated his view then that Son had "attempted to withdraw money fraudulently from the account." This statement indicates Father's intent not to allow Son and Daughter discretionary access to the money in the account. No evidence in the record shows Father intended to create a joint tenancy in the bank account which was a present and permanent gift to Son or Daughter.[4]

¶ 15 Son relies in great part on *Gatewood, supra.* In *Gatewood,* a married couple held a joint checking account. Two months before the husband's death, the husband closed the account and immediately deposited the proceeds in a new joint account with his sister. After the husband died, his widow was appointed executrix of her husband's estate and she sought an order declaring the money that had been removed from husband's and wife's joint account and placed in a new joint account was in fact the property of the estate. The husband's sister argued she was the owner of the money based on the survivorship provision of the new account. The trial court granted summary judgment to the widow. The Oklahoma Supreme Court affirmed, based on authority that a true joint tenancy may be terminated only with the consent of all parties to it, and that if one joint tenant withdraws more than his share, the money withdrawn remains the property of the other joint tenant. 549 P.2d 829 at ¶ 13. The implication in *Gatewood* is that the account was a long-standing joint checking account to which both spouses had equal access and of which the spouses intended to have equal ownership. Those facts differ from this case, where the undisputed evidence shows that the account and the money in it was owned by Father, who had not relinquished control of the account to Son or Daughter, despite placing their names on the account.

¶ 16 In joint accounts, one party to an account may appropriate the entire fund under two circumstances: first, where in fact and in law the one appropriating is the real owner of the money, and second, where the interests acquired by the other are by implication or express contract subject to destruction, as in the case of a reserved power to revoke a gift of a joint interest. 161 A.L.R. 71, "Power of One Party to Joint Bank Account to Terminate the Interests of the Other."[5] Whether the owner of the account

---

4. The dissent misapprehends the test by stating "the relevant question is whether Father intended to vest joint *title* in Daughter and Son at the time he created the accounts." On the contrary, the dissent points to no evidence that Father intended Son (or Daughter) to exercise joint *ownership* over the account, which would evidence a present gift.

5. One clear instance of an owner's right to remove another's name from an account is an account which is made joint for the convenience of the owner. As explained in 10 Am.Jur.2d Banks and Financial Institutions § 673. Funds belonging primarily to one depositor-Deposits for convenience (citations omitted):

Many joint deposits are established for the convenience or benefit of the original depositor. A "convenience account" is one which the depositor has not surrendered his exclusive right to the funds. Where a person deposits money in his name and another's name or changes his account from his name to his name and another's name simply for convenience, such other person acquires no interest in the deposit and of course has no right to survivorship. The fact that funds belong to one depositor at the time a so-called joint deposit is established is persuasive in determining whether he opened the joint account merely for convenience to enable the other person to write checks on it for his benefit. In addition, there is authority that it will be presumed in the ordinary case of a deposit by a person in the name of himself and another that it was done for the purpose of convenience only. This rule is held to be subject to an exception, however, where the parties are husband and wife, for in such case the husband is presumed to have intended to benefit the wife by conferring upon her the right of survivorship.

funds has retained the power to revoke the other's access to the account, or the other's name being on the account, depends (again) on the intent of the parties and on "the realities of ownership." *Id.* Stated another way, one who is in reality the sole and absolute owner of the account funds may dispose of the money as he wishes without liability to the ostensible co-owner. *Id.*

¶ 17 A case with facts similar to the case at hand is *Walsh v. Keenan,* 293 N.Y. 573, 59 N.E.2d 409 (1944). In *Walsh,* the plaintiff's sister closed her sole account and placed the funds in a joint account, with right of survivorship, with the plaintiff. Both sisters signed signature cards, but the plaintiff never held the bank book, nor had any control over or use of the account. The sister who originally opened the account later closed it and placed the funds again in a sole ownership account. Ten years later, the owner again asked the bank to add the plaintiff's name to the account, with right of survivorship, and the owner retained control over the bank book and the funds in the account. A year later, the owner removed the funds from that account and placed them in a joint account with her nephew, the defendant. The defendant nephew never had a signature card, possession of the bank book, nor control over the account. A month later, the owner asked the bank to remove the defendant's name from the account. A month after that, the owner wrote a check for the balance of the account funds to the defendant nephew, who deposited the money in a new joint account with right of survivorship in the names of the owner and the defendant nephew. Money from the account was used for the owner's care and funeral expenses. The nephew never withdrew or had access to account funds for his own use. The owner died while the funds were still in the joint account with the nephew. The plaintiff (the owner's sister) sued the nephew for a part interest in the funds as a survivor to a joint tenancy. The trial court directed the defendant to pay a half interest to the plaintiff.

¶ 18 On appeal, in *Walsh,* the court noted two presumptions in New York where money has been placed in an account with two names: (1) that a deposit made in the names of the depositor and another person in form to be paid to either or the survivor of them becomes the property of such persons as joint tenants, and (2) that title passes to the survivor. *Id.* at 411. The court noted that the first presumption may be overcome where there is proof that the owner/depositor never intended to create a joint tenancy. *Id.* The second presumption, however, cannot be rebutted and applies in favor of the named survivor as to any funds remaining in the account at the time of the owner's death. *Id.*

¶ 19 The plaintiff in *Walsh* contended there was no evidence to support a finding that the decedent owner of the funds intended anything but the grant of a vested property interest to plaintiff when she placed the plaintiff's name on the account. The appellate court noted the facts (that the decedent owner of the funds frequently changed the name of the co-depositor on the account, the decedent retained control over the account's bank book and funds, and the decedent used the same funds to close and reopen various accounts), all rebutted the presumption that a joint tenancy was intended. *Id.* at 412. The court found no evidence to support the trial court's decision that the plaintiff retained any ownership interest in the account funds. *Id.* The court held that the defendant nephew was the sole owner of the funds as the survivor whose name remained on the account at the time of the decedent's death. *Id.* The court reversed the case and ordered the plaintiff's complaint dismissed. *Id.*

¶ 20 In *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1974), the West Virginia Supreme Court noted the following analysis:

The cases continue to hold that the party furnishing the funds for the account during his lifetime may show that he had no intention to make a gift, notwithstanding the form of the account. This is true

No evidence in this case shows Father placed the names of Son or Daughter on the account for convenience. (This passage therefore has no bearing on the finding that Daughter was the owner of the account as survivor). However,

this authority supports the view that simply adding a name to an account does not amount to creating a joint tenancy with that person absent the intent of the owner of the account to create such an interest.

in states which have statutes providing that the opening of the account in joint and survivorship form creates a joint tenancy and is also true in states that have a bank protection type statute. Not only may a party opening the account withdraw all the funds, but he may also terminate the interest to the co-depositor by merely instructing the bank to strike the latter's name from the account or to substitute another name. These acts are treated as tantamount to a withdrawal.

If joint tenancies are in fact established by the opening of an account in joint form, so that the survivor is entitled to the proceeds, it should follow that the donee has an interest in the account during his lifetime. But it does not work this way. If the depositor claims during his lifetime that he did not intend to create the joint tenancy, notwithstanding the form of the account, the courts have found that no such tenancy was created and that the party opening the account and furnishing the funds prevailed over the non-contributing party.

*Id.* at 690–691, quoting Kepner, *Five More Years of the Joint Bank Account Muddle,* 26 U.Chi.L.Rev. 376. In *Dorsey,* the plaintiff mother placed her daughter's name on the mother's account and the daughter withdrew all of the money and placed it in an account with her husband. The mother sued the daughter to recover the funds. The trial court granted summary judgment to the mother. The appellate court found the evidence of the donor's intent was disputed and remanded for trial. *Id.* at 692. See also *People's Sav. Bank in Providence v. Rynn,* 57 R.I. 411, 190 A. 440 (1937) (father added son's name to his account, but father deposited all money in the account, retained control of the account, and father later withdrew all of the account funds and placed them in a joint account naming father and his daughter-in-law, it was held the father never intended to create a joint tenancy interest in the son).

¶ 21 These cases support the view that where one depositor owns the funds in the account and retains control, it is possible to show that the depositor never intended to create a joint tenancy, but instead retained full ownership sufficient to withdraw all of the funds in the account and place them in another account, with joint or single ownership. In this case, Father directed the Bank to remove Son's name from the existing account rather than withdrawing the funds and creating a new account. The result is no different based on that distinction. In *Wetzel v. Collins,* 170 Md. 383, 185 A. 117 (1936), two sisters were named on a joint account with right of survivorship. After the death of one sister, the other claimed the account. The deceased sister's widower argued that the decedent's name was the only name remaining on the account. The account showed that the name of the surviving sister had been crossed through. The trial court and appellate court found in favor of the surviving sister, after noting that because the sisters were joint owners, either had the right to revoke the name of the other, but that there was no evidence in the case to show who directed the deletion of the surviving sister's name and it was therefore unclear whether the deletion was made by one with authority to do so. *Id.* at 119.

¶ 22 In *Rasey v. Currey,* 265 Mich. 597, 251 N.W. 784 (1933), the owner/depositor of funds in a savings account directed the bank to strike the name of her nephew as a co-owner of the account. Thereafter, the nephew died and the depositor/owner directed the bank to add the name of her step-daughter as a co-owner. After the depositor/owner died, the nephew's widow claimed to have a right to the amount of the savings account, based on her claim that placing the nephew's name on the account was an irrevocable gift of a joint tenancy interest which the widow owned as her husband's survivor. The court denied the widow's claim, stating, in pertinent part:

If a depositor directs a bank to pay the deposit to the depositor, or another designated, the depositor may change the designation or limit payment to himself or his order. The designation of the bank account as one subject to the order of [the depositor/owner] or [her nephew] did not constitute a gift inter vivos, for it did not

strip [the depositor/owner] of all ownership of and dominion over the deposit.

*Id.* at 785.

¶ 23 The Virginia Supreme Court has held that a bank does not breach its obligations to co-owners of a joint account where it accepts one owner's unilateral addition of a third party as an additional joint tenant with right of survivorship.[6] *Caine v. NationsBank, N.A.*, 262 Va. 312, 551 S.E.2d 653 (2001). That holding suggests that owners of joint account retain authority to amend the names of account owners. The action in *Caine*, of adding a third co-owner without the original co-owner's knowledge or consent, diluted the original co-owner's surviving share.

¶ 24 The account documents in this case show the names on the account as: "(Father) & (Son) & (Daughter), JTWROS." Son has not argued that the account should be treated as a convenience account so that *neither* he nor Sister would be entitled to a right of survivorship. Nor has Son argued that the funds in the account belong to Father's estate. Son has argued exclusively that he and Sister were surviving joint tenants and as such each owns an interest in the account which must be partitioned. However, it is clear that Father retained the authority to change the names on the account and that Father did not intend to give a present gift of a joint tenancy interest in the account to Son or Daughter. It is also undisputed Father intended to remove Son from the account. However, Daughter's name remained on the account, along with reference to right of survivorship, at the time of Father's death. The trial court therefore properly determined Daughter was entitled to the account as the surviving joint tenant.

¶ 25 As noted above, the relevant question in a case like this is the *intent of the owner* of the account in adding names to a joint bank account. The evidence from Bank, that Father retained control over the account and

that Son and Daughter did not have access to the funds, along with the written notice to Bank stating Father's instruction to remove Son's name from the account (which Father verified with Banker), provides undisputed evidence that Father did not intend to create a joint tenancy gift to Son which Father did not have authority to modify in accordance with the "realities of ownership" of the account in this case. The undisputed evidence from Bank shows that Father intended to retain control over the account, including authority to modify the account's named owners, which control Father in fact exercised. Son did not have a joint tenancy right which existed even after Father directed that Son's name be removed from the account. At the time of Father's death, Daughter was listed as the only other name on the account and the account was a survivorship account. The trial court did not err in granting summary judgment to Daughter.

¶ 26 In his Petition in Error, Son also argues the trial court erred in denying his entry of appearance/request to substitute counsel and application to extend time to file supplement to Son's responses to Daughter's and Bank's motions for summary judgment. The trial court noted both at the hearing on the various motions and in its order denying Son's Motion for New Trial that those documents were filed out of time, after the issues had been submitted, and without leave of court. We find no abuse of discretion in the trial court's rulings on those documents. Son further argues the trial court erred in finding it had jurisdiction to hear this matter because there was no written agreement to waive jurisdiction. This matter was proceeding before a district judge when it was consolidated with Father's probate proceeding. The consolidated actions were then assigned to the special judge who issued the summary judgment decision from which Son appeals here. The record shows the parties ap-

6. Oklahoma has no statutory provision on the time for determination of survivorship rights. Virginia has the following statute, Code § 6.1–125.6:

The provisions of § 6.1–125.5 as to rights of survivorship are determined by the form of the account at the death of a party. This form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

peared in court October 15, 2002 and waived any objection to the jurisdiction of a special judge. The trial court also noted the parties had waived jurisdiction when it announced its decision on the summary judgment motions in court July 1, 2004. Title 20 O.S.2001 § 123(A)(9) provides that a special judge has jurisdiction to consider any matter, including title to personal property, which is part of a probate proceeding. This matter was consolidated with the probate proceeding. Additionally, in *Burk v. Burk*, 577 P.2d 65, 1978 OK 43, the Oklahoma Supreme Court held that a waiver of jurisdiction of a special judge does not have to be made in writing where no objection is made before the trial or hearing begins, reconciling 20 O.S. § 123 and § 124. Son's argument regarding the special judge's jurisdiction is therefore without merit.

¶ 27 The undisputed material facts in the record here show Daughter and Bank were entitled to judgment as a matter of law. AFFIRMED.

JOPLIN, P.J., concurs; and HANSEN, J., dissents with separate opinion.

CAROL M. HANSEN, J., dissenting:

¶ 1 The majority abandons established Oklahoma case law in favor of judicially legislating new forms of joint tenancy bank accounts based on the law of other states. Instead of applying Oklahoma law in determining whether the account at issue was or was not held in joint tenancy, the majority creates such account forms as "convenience accounts" and "survivorship accounts" to achieve the result it desires.

¶ 2 The majority correctly states Oklahoma law, even though it fails to apply it. The Oklahoma Supreme Court recently summarized the nature of a true joint tenancy:

> The creation of a valid joint tenancy establishes a present estate in which the joint tenants are seised of the whole. The principle characteristic of the tenancy is a right of survivorship. This survivorship right does not pass anything from a deceased joint tenant to the survivor upon the death of the former since, by the very nature of the tenancy, title of the joint tenant who dies first terminates at death

and vests *eo instanti* (i.e. immediately) in the survivor. Because joint tenants are seised of the whole while alive, the survivor's interest is simply a continuation, or extension, of his/her existing interest. This Court has recognized a bank deposit may be so arranged and handled that co-depositors may be joint owners thereof during their mutual lives, and upon the death of one joint owner the survivor will take the whole thereof. The controlling question is whether the person creating the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship.

*In Re Estate of MacFarline*, 2000 OK 87, 14 P.3d 551, 564 n. 5 (citations omitted).

¶ 3 In the present case, the relevant question is whether Father intended to vest joint title in Daughter *and* Son *at the time he created the account.* Daughter acquired the same interest by the same conveyance at the same time as did Son. *See Shackelton v. Sherrard*, 1963 OK 193, 385 P.2d 898, 901. If Father did not intentionally and intelligently create a condition embracing the essential elements of joint ownership and survivorship, then neither Son nor Daughter was seised of the whole while alive and neither had a continuing interest upon Father's death. If Father did transfer joint title to Daughter and Son, then Son's survivorship right remained unaffected by the later removal of his name from the account. *Watkins v. McComber*, 1952 OK 422, 256 P.2d 158, 159.

¶ 4 The record contains conflicting evidence as to Father's intent at the time he created the account. Daughter attached to her motion for summary judgment her own affidavit stating that after her mother's death, Father, Son, and Daughter executed new signature cards as joint tenants with right of survivorship. Son corroborated this statement in his affidavit. Daughter also submitted a portion of Banker's deposition in which he testified as follows:

Q During [Father's] life, did Bank of Oklahoma have an arrangement and [serve as] custodian of municipal bonds owned by [Father] [and] one or more individuals in join[t] tenancy?

A Yes, we did.

Daughter's, Son's, and Banker's statements are evidence from which a trier of fact could find Father intended to vest title to the account in Son and Daughter as true joint tenants with the right of survivorship. Banker's statement the account was Father's money and Daughter and Son "were not to take the money" is controverting evidence as to the existence of a true joint tenancy. This record establishes a question of fact as to Father's intent. It is not our role to weigh the evidence. *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730. I would reverse the trial court's order granting summary judgment and remand for trial.