Phene Sherrard SHACKELTON,
Plaintiff in Error,

v.

Ralph E. SHERRARD and Lavonia Sherrard, his wife, Defendants in Error.

No. 40120.

Supreme Court of Oklahoma.

Sept. 17, 1963.

Rehearing Denied Oct. 22, 1963.

Harve N. Langley, Pryor, for plaintiff in error.

Bassmann, Gordon, Mayberry & Lavender, Claremore, for defendants in error.

BERRY, Justice.

The parties will be referred to herein as they appeared below.

Plaintiff in Error, Phene Sherrard Shackelton, plaintiff below, brought this action in district court against Ralph E. Sherrard and Lavonia Sherrard, his wife, defendants below, to recover possession of and quiet her title to a tract of land designated as the E/2 of SE/4 of SE/4, and the SW/4 of SE/4 of SE/4 of Sec. 14–20N–17E of the IB&M, Rogers County, Oklahoma, containing 20 acres more or less.

Plaintiff alleged in her petition that she was the former wife of W. P. Sherrard; that the subject property had been conveyed to her and her husband, W. P. Sherrard, by joint tenancy warranty deed in March, 1946; that they were divorced in November, 1950, and that the death of W. P. Sherrard on February 3, 1961 was judicially determined by the County Court of Rogers County in March, 1961, all of which served to vest fee title ownership of said land in her. Plaintiff further averred that defendants were in possession of said land; that they claimed an interest therein under a quit claim deed from W. P. Sherrard and Myrtle Sherrard dated and recorded in December, 1960.

Defendants answered by general denial and cross petition setting out that they were the son and daughter-in-law of W. P. Sherrard; that plaintiff was never the wife of said W. P. Sherrard for the reason that he (W. P. Sherrard) had a living wife from whom he was never divorced; that the purported divorce was invalid for this reason; that they (defendants) had cared for Mr. Sherrard during his lengthy last illness; that Mr. Sherrard executed and delivered a quit claim deed to them covering his interest in the property during his lifetime thereby effectively destroying the joint tenancy in the land and vesting them with an undivided ½ interest in the property. Defendants cross-petitioned for a decree establishing their ½ interest in the property and for partition. The trial court found generally for defendants on their cross-petition and ordered partition. From the trial court's order overruling motion for new trial, plaintiff lodged this appeal urging error in the trial court's "failure to adopt the joint tenancy, with right of survivorship, that is in the event of death of one of the joint tenants, the plaintiff in error as surviving joint tenant became the owner by operation of law of the entire subject matter of the action, described in the joint tenancy deed" and further that in the alternative, the Court erred in not admitting evidence and rejecting offer of

proof to effect of the contribution by the deceased tenant and plaintiff toward purchase money for the property in order to determine the interest in said property. Plaintiff, in her brief, submits the one proposition, namely: "The joint tenancy is absolute, and the surviving tenant (plaintiff) should be adjudged the entire estate."

In support of this position, plaintiff urges, as we understand it, that contrary to the general rule, the statutory law of Oklahoma, Title 60 O.S.1961 § 74, prohibits the severance by one joint tenant of his interest in derogation of the other joint tenant's right of survivorship, save and except in the case of an execution, levy and sale of the interest of a judgment debtor.

There was no great variance in the evidence adduced at the trial in the lower court. The parties stipulated that Mr. Sherrard had a living wife at and during the time of his cohabitation with plaintiff. Plaintiff's evidence revealed the execution of the joint tenancy deed, the decree of divorce, the death of Mr. Sherrard, and the county court's determination of his death and also admitted the deed from Mr. Sherrard to defendants.

As we view the matter then, the rights of these parties turn upon the issues as to whether or not under our law the conveyance by a joint tenant to a third party of his interest in the joint tenancy property in his lifetime severs the joint tenancy. And further, is there any contractual modification or restriction inherent therein under the facts in this case by virtue of the parties' original contribution of the acquisition cost of such property, and the decree of divorce which contained the words "the title and ownership of said land (the lands involved herein) is not by this judgment to be altered or changed, but said deed shall remain in full force and effect, and upon the death of one of the grantees, the survivor to become the owner of said lands, as is provided by law as to joint tenancy."

Plaintiff contends here that the decree of the trial court in the divorce action constituted a bar to either party's right to deal separately with his individual interest in the joint property. We are unable to so conclude. Without considering what jurisdiction, if any, the trial court had to determine property rights of the respective parties, the effect of the words used in the decree is to negate any construction that the property rights of the parties were to be affected by such decree. That is to say, the title to the subject property was to remain status quo with all attendant rights. No issue was raised in the divorce case as to property rights and none was determined.

Plaintiff also contends that the trial court erred in refusing to permit her to testify that she had furnished $1,000.00 of the $1,400.00 consideration for the property from her separate funds. Our research has led us to no case where this particular point is raised under similar facts; however, the general rules appear in the annotations in 43 A.L.R.2d 922–924 and clearly support the trial court's ruling.

Under the circumstances here as to a third party grantee (defendant herein), we believe the better rule is that where a man and woman have acquired property in joint tenancy while cohabiting as husband and wife, even under an illegal marriage, the same rule will be applied by analogy as would obtain under a valid marriage. Under such rule it is ordinarily immaterial how much money the wife or husband has actually contributed to the purchase of the property involved because a gift from one to the other is presumed. Absent any fraud or special agreement, where the wife or husband knowingly agrees and consents to the conveyance being made to themselves as joint tenants, either is estopped to deny the tenancy of the other. See 43 A.L.R.2d supra, and Wisel v. Terhune, 201 Okl. 231, 204 P.2d 286.

One of the characteristics of joint tenancy is the equality of the interest

held by the respective tenants. 60 O.S. 1961 § 74; Stark v. Coker et al., 20 Cal.2d 839, 129 P.2d 390, 393; 48 C.J.S. Joint Tenancy § 5, p. 930; and Cole v. Cole, 139 Cal.App.2d 691, 294 P.2d 494. Although the interests of joint tenants are presumed to be equal, nevertheless, if there is proof of some special agreement between them at variance with the legal presumption of equality, their rights and interests will then be fixed in accordance with their own agreements.

■ Here the plaintiff did not plead nor offer to show a special agreement. The mere fact of a greater contribution will not overcome the presumption of equality. Wallace v. Riley et al., 23 Cal. App.2d 654, 74 P.2d 807, 812.

■ Plaintiff's strongest argument centers on her contention that the language used in 60 O.S.1961 § 74, absolutely prohibits a voluntary severance by one joint tenant of his interest under the maxim "expressio unius est exclusio alterius". To this we cannot agree. The cases of Draughon v. Wright, 200 Okl. 198, 191 P.2d 921; In re Pugh's Estate, Okl., 281 P.2d 937; Watkins v. McComber, 208 Okl. 352, 256 P.2d 158; and Wisel v. Terhune, supra, cited by plaintiff do not support her position and are clearly distinguishable from the facts here. Although our research has not developed a holding by this Court directly on this point, under facts here there is ample direction from this Court and many holdings of other courts which clearly indicate the rule of law applicable thereto. The general rules of law applicable are found in 64 A.L.R. 2d, pp. 921–922:

"In the ancient language of the law, joint tenants were said to hold per my et per tout, or in plain words, 'by moiety or half and by all.' This statement, which of course is strictly accurate only in the case of there being but two joint tenants, serves to indicate the conception of a joint tenancy as one which allows each owner to hold a particular share

which he may alienate, while at the same time he and the other or others hold the entire property as by a single ownership. The theoretical peculiarity of a joint tenancy at common law, and also by the law as it still generally prevails, is the coexistence of the four unities, the unity of interest, the unity of title, the unity of time, and the unity of possession, that is to say 'joint tenants have one and the same interest accruing by one and the same conveyance, at one and the same time, and held by one and the same undivided possession.' The principal practical aspect of a joint tenancy consists in the fact that on the death of one of the joint tenants, no severance of his interest having theretofore occurred, the exclusive title inures to the surviving joint tenant or tenants.

"From these peculiarities of ownership it follows logically, and also under the law, that joint tenants can terminate the joint tenancy by any act which is inconsistent with its continued existence, or which operates to destroy its essential unities or one or some of them. So to the extent of the interest affected, and therefore in toto where there are only two joint tenants, a joint tenancy is severed by any act of a joint tenant which operates to destroy one or more of its unities.

"A severance can occur only during the lifetime of the tenant who would sever, since at the instant of his death the title inures to the surviving tenant or tenants. * * *"

Decisions in at least 25 other jurisdictions have announced the rule to be "The act of a joint tenant in conveying his interest in the property to a stranger operates to sever that interest from the tenancy so that in the usual case of there being only two joint tenants the joint tenancy is completely terminated." See 64 A.L.R.2d, p. 925 and cases cited. Un-

less there is something prohibitory in Title 60 O.S.1961 § 74, the general rule is controlling here.

50 Am.Jur., Secs. 245 and 246, pp. 240 and 241, states:

"The maxim 'expressio unius est exclusio alterius' is not of universal, but of limited, use and application. It is an aid to construction, not a rule of law. It is applicable only under certain conditions, is subject to exceptions, and requires great caution in its application. It should not be carried beyond the reason for its existence. Its application should produce a rational interpretation, and support a policy which may be reasonably supposed to have dictated the enactment. It has even been declared that the maxim is properly applicable only when, in the natural association of ideas, that which is expressed is so set over by way of contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment. Under these rules, it has been held that a statutory definition of a term as 'including' certain things does not necessarily put a meaning thereon limited to the inclusion.

"The rule  *  *  *  is applied to assist in arriving at the real intention of the lawmakers, where such intention is not manifest, and only for such purpose. It may not be used to defeat or override clear and contrary evidences of legislative intent, but must yield whenever a contrary intention on the part of the lawmaker is present."

The theory of joint tenancy came to us from the common law. We said in Watkins v. McComber, supra, "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma." As hereinbefore pointed out, a joint tenant can terminate the joint tenancy by any act which is inconsistent with its continued existence. We hold that the execution of the quit claim deed by Mr. Sherrard, the delivery in his lifetime to his son and daughter-in-law, effectively severed the joint tenancy with the result that they and plaintiff were at that time tenants in common of the property.

Record examined and we hold that the judgment of the trial court is not against the clear weight of the evidence.

Affirmed.

BLACKBIRD, C. J., and HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.