1999 OK CIV APP 42

**Sicley Michaelle EARNHEART, Plaintiff/Appellant,**

v.

**James Loren EARNHEART, Defendant/Appellee.**

No. 90,400.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 12, 1999.

G. Gail Craytor, Craytor & Craytor, Broken Bow, Oklahoma, For Plaintiff/Appellant.

Mitchell K. Leonard, Idabel, Oklahoma, For Defendant/Appellee.

### OPINION

GARRETT, Judge:

¶ 1 Appellant, Sicley Michaelle Earnheart, and Appellee, James Loren Earnheart, were divorced by virtue of a trial court judgment dated February 27, 1997, but not filed until October 14, 1997. They had one child. In the Divorce Decree the court divided property, awarded custody of the minor child to James, and ordered Sicley to pay child support. Sicley appeals.

### ONE

¶ 2 Sicley contends the court erred in its child support award because the child support guidelines were not followed. The uncontroverted evidence in the records shows Sicley had monthly income of $1,213.33. However, in calculating the amount of child support, the court used the sum of $1,374.00 as her monthly income. James does not dispute the mistake, but contends the difference in amount is "not a substantive deviation from the Oklahoma Child Support Guidelines." Statutory child support Guidelines were provided by 43 O.S. Supp.1995 § 118 (now 43 O.S. Supp.1997 § 118, with amendments not material here). The guidelines do not permit deviation without "specific findings of fact supporting such action." See § 118(A). Here there were no specific finding of facts in support of the court's deviation from the guidelines. While the amount is small, we decline to hold it to be negligible. This is especially true because this case must be partially reversed and remanded for further proceedings on other grounds. On remand, the court is directed to recalculate child support, and to enter a new child support order using up to date financial data.

### TWO

¶ 3 Sicley contends the court erred in finding certain corporate stock in a publishing company belonged to James and his mother. As to this issue, we agree with Sicley. She contends the stock was purchased as joint property and placed in joint tenancy. The stock certificates were not introduced, but the evidence was uncontroverted that the stock certificates were purchased in both Sicley's and James' names. Evidence showed, including testimony from Sicley, the funds used to purchase the stock came from the sale of a video store owned by James' parents. The proceeds were deposited into

an account held by his parents. His mother then issued a check to purchase a cashier's check to be used to purchase the stock. The cashier's check was given to Sicley to proceed with the stock purchase and she did as directed. The evidence showed the stock was purchased because Sicley was employed by the company issuing the stock and it was believed her employment position would be secure by doing so. James' mother is not a party to this action.

¶ 4 The court found the stock was not acquired due to the joint industry of the parties, and Sicley contributed nothing in acquiring the stock. As far as it goes, that finding was correct. However, the stock was acquired by Sicley and James as a gift. Ownership was placed in both names. Neither contributed to the acquisition of the stock. Absent fraud, or a contract or agreement that the stock was to be separate property, a presumption exists that it was joint property subject to division. Instead of rebutting the presumption, the evidence below sustained the fact that the gift, when made, was to both James and Sicley, and for the benefit of both of them. Once the gift was made, the donor's intent may not be changed because of the divorce. James and Sicley were each estopped to deny the ownership of the other. C.f. *Shackelton v. Sherrard*, 1963 OK 193, 385 P.2d 898. We find the court's order as to the stock was contrary to the clear weight of the evidence. On remand, entry of a judgment dividing the shares of stock equally between James and Sicley is directed.

### THREE

¶ 5 Sicley contends the court erred in failing to find that a common law marriage existed prior to the ceremonial marriage entered into by James and herself. She contends the existence of the common law marriage effects the equitable distribution of the marital property. A review of the record shows Sicley understood the relationship with James to be an "on again, off again situation" prior to the ceremonial marriage. This is inconsistent with the showing necessary for a common law marriage. "A party asserting a common law marriage must prove

the following elements: an actual and mutual agreement between the spouses to be husband and wife; a permanent relationship; an exclusive relationship, proved by cohabitation as man and wife; and the parties to the marriage must hold themselves out publicly as husband and wife ..." *Matter of Estate of Stinchcomb*, 1983 OK 120, 674 P.2d 26. These elements were not proved. In addition to Sicley's testimony, a written document was introduced as evidence at trial which disclosed that the parties did not intend the relationship to be a marital one. The trial court did not err in failing to find a common law marriage prior to the ceremonial one.

### FOUR

¶ 6 Sicley contends the court erred in its property division order because certain property was sold during the term of the common law marriage. Because we uphold the trial court's finding there was no common law marriage, we need not consider this matter further.

### FIVE

¶ 7 Finally, Sicley contends the court erred when it placed custody of the child born of the marriage with James. James filed an application for temporary custody of the child after the divorce was filed. After hearing, the court ordered that temporary custody of the child would remain with Sicley. However, after the trial, in entering judgment, the court placed custody of the child with James. Sicley contends no change of condition was shown, therefore it was error to change custody of the child. The principle and cases Sicley relies upon are distinguishable because they involve a final decree of divorce with placement of custody of the child and after that decree, a party sought *modification* of the decree. Here, there was no final order until the divorce decree, which placed custody of the child with James. However, we assume arguendo, Sicley is contending the court erred in placing custody with James. Among other things, the court heard testimony *inter alia* that Sicley had denied James contact with the child for the time of the temporary custo-

dy; and that she had attempted suicide during the marriage. "In fixing the primary custody of a minor child in a divorce action, the best interest of the child must be the paramount concern of the court." *Manhart v. Manhart*, 1986 OK 12, 725 P.2d 1234. See also, 43 O.S. Supp.1991 § 109. As the Court noted in *Manhart*:

> "If the trial court's judgment, awarding primary custody, is not against the weight of the evidence concerning the best interests of the children, it will not be grounds for reversal. *Gamble v. Gamble*, 477 P.2d 383 (Okl.1970); *Ness v. Ness*, 357 P.2d 973 (Okl.1960). See also, *Perry v. Perry*, 408 P.2d 285 (Okl.1965). In *Perry*, we said there is good reason for the existence of this rule. The trial court confronted with the parties themselves and the witnesses. It is better able to determine the controverted issue of fact than is this Court, which of necessity, is only permitted to consider the dry, printed words in the record. See also, *Boyle v. Boyle*, 615 P.2d 301 (Okl.1980)."

¶ 8 We cannot say that it was against the clear weight of the evidence to place custody with James.

## CONCLUSION

¶ 9 The child support order is reversed. The order awarding the corporate stock to James as his separate property, treated in part two of this Opinion, is reversed. Otherwise the judgment is affirmed.

¶ 10 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this Opinion.

JOPLIN, J., and BUETTNER, P.J., concur.