2011 OK CIV APP 102

Randy M. COMBS and Teresa Combs, husband and wife, Plaintiffs/Appellees,

v.

Ethel Maxine SHERMAN a/k/a/ Stella Maxine Sherman a/k/a Ethel Maxine Overbey, Agnes Marie Osborn a/k/a Agnes Marie Ausborn, Stephanie D. Willis, and Ricky D. Sherman, if living, or if they or any of them be deceased, their known and unknown heirs, beneficiaries, executors, administrators, devisees, trustees, legatees, successors and assigns, immediate and remote of each such person; Legacy Royalty, LLC, Spartan Resources, LLC, Lake Hamilton Minerals, LLC, Tim W. Munson, LLC, Pebblestone Properties, LLC, and Mountain Front Resources, LLC, Oklahoma limited liability companies, if in existence, or if dissolved or defunct, the unknown successors, trustees, or assigns of any such defunct or dissolved limited liability companies, Defendants/Appellants.

No. 108,255.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 29, 2011.

David Youngblood, Atoka, Oklahoma, for Plaintiffs/Appellees.

Laura J. Corbin, Laura J. Corbin, PLLC, Tishomingo, Oklahoma, and Barry Squires, Carnegie, Oklahoma, for Defendants/Appellants.

KEITH RAPP, Judge.

¶ 1 In this quiet title action, Defendants, including Ethel Maxine Sherman and Agnes Marie Osborn (Sellers), appeal the trial court's judgment in favor of Plaintiffs, Randy and Teresa Combs (Buyers). The trial court ruled Sellers had conveyed 1/2 the mineral interest in a tract of land to third parties, who later conveyed that interest to Buyers. Sellers asserted they had conveyed only a 1/4 interest. For the following reasons, we reverse and remand with instructions to enter judgment in favor of Defendants.

## FACTS

¶ 2 Sellers are two sisters who held joint ownership in a 56–acre tract of land in Atoka County. In a 1993 letter, they offered to sell the property to neighboring landowner Kenneth Rowton "for $175.00 per acre with one-quarter mineral rights going to the buyer." The letter contained a "P.S." stating "Reference to the mineral rights—Agnes and I [Ethel Sherman] will retain 3/4 of the minerals and sell 1/4 with the 56 acres."

¶ 3 Rowton and his son purchased the property at that price. No sales contract was executed. A law firm handling the closing prepared two identical joint tenancy warranty deeds, one for Seller Ethel Maxine Sherman, and the other for Seller Agnes Marie Osborn and her husband. Each contained the same legal description and the same reservation:

> E 1/2 of NE 1/4 of NW 1/4 and SW 1/4 of NE 1/4 of NW 1/4 of Section 17; and W 1/2 of SE 1/4 of SW 1/4 and all that part of SE 1/4 of SW 1/4 of SW 1/4 lying East of M.K. & T. Railroad right-of-way in Section 8, All in Township 3 South, Range 11 East, containing 56 acres, more or less, as the case may be, **LESS AND EXCEPT an undivided 3/4ths interest in and to the oil, gas and other minerals lying in and under the property, which are specifically reserved by Grantor herein, it being the intent of Grantor herein to convey to Grantee herein, an undivided 1/4th mineral interest.** (Emphasis in the original).

¶ 4 In 1999, the Rowtons sold their entire interest in the property to Buyers, Randy and Teresa Combs. Later, Buyers leased their mineral interests. In 2007, Sellers sold their mineral interests to Legacy Royalty, LLC, another of the appellants in this case.

¶ 5 A disagreement arose over the percent of mineral interests conveyed by Sellers to the Rowtons and then to Buyers. In 2009, Buyers filed a petition, claiming a 1/2 mineral interest in the property. They asserted the Rowtons had acquired a 1/4 interest from each sister, which added up to a 1/2 interest. Sellers asserted they had only conveyed a 1/4 interest.

¶ 6 At trial, Kenneth Rowton testified his impression was that he was purchasing half the mineral interest, though he conceded he "just had in my head it was about half." Buyer Randy Combs testified Rowton said "he would sell it to me the way that he purchased it."

¶ 7 On the other hand, both Sellers testified they had intended to reserve 3/4ths of their interests. Their attorney examined Seller Agnes Osborn as follows:

Q. Did it [the deed] state you were keeping three fourths of the minerals?

A. Yes it did. And that he was getting one fourth.

Q. Is it, it's not possible is it [to] keep three fourths and convey a half is it, Mrs. Osborn?

A. Not in my math.

On cross-examination, she was asked:

Q. Ma'am, if you had a half, we've already established you had a half, your sister had a half and the deed says that it is your intent to convey a quarter, it is the intent of the grantor to convey a quarter, if you have a half and you get rid of a quarter you have a quarter left, don't you, ma'am?

A. I guess I would have.

¶ 8 The trial court granted judgment in favor of Buyers, finding they had a 1/2 mineral interest in the property. In its journal entry of judgment, the court made the following Conclusions of Law:

> Oklahoma has been committed to the Duhig Rule whereby the conveyance represents the grantor as the owner of a

particular interest in property, and such interest is conveyed by the deed. The grantor is estopped by his general warranty to claim that the deed conveyed a less estate than grantor's complete ownership. *Birmingham v. McCoy*, 358 P.2d 824; *Duhig et al. v. Peavy–Moore Lbr. Co., Inc.*, 135 Tex. 503, 144 S.W.2d 878.

. . .

The legal effect of the conveyance or warranty language in Ms. Sherman and Ms. Osborn's deed was their intent to convey to Mr. Rowton 1/4 mineral interest each. To hold otherwise, would be in breach of their warranty clause where they warranted the title to Kenneth and Roy Rowton.

The Court finds from the testimony that Mr. Rowton intended on receiving a 1/2 interest in the minerals. That is exactly what the reservation and intention clause of the paragraph does is to pass to him 1/2 of the minerals—1/4 from Ms. Sherman and 1/4 from Ms. Osborn.

¶ 9 Sellers appeal.[1]

## STANDARD OF REVIEW

■ ¶ 10 Actions to quiet title to realty are proceedings in equity. We therefore review and weigh the evidence, but absent an error of law, we will set the judgment aside only if it is clearly against the weight of the evidence. *Dawson v. Douglas*, 1993 OK CIV APP 32, ¶ 14, 849 P.2d 441, 444.

## ANALYSIS

■ ¶ 11 Each of the two deeds given by the sisters of their joint ownership reserves 3/4ths of the mineral interests to each Seller, and conveys the remaining 1/4 of each Seller's mineral interest. Buyers argued that because one quarter plus one quarter equals two quarters, or one half, then one half is what was conveyed to them. For several reasons, this reasoning must be rejected.

¶ 12 First, Buyers' math simply does not add up. Under Buyers' logic, if each sister were to have reserved an undivided 3/4ths interest, then they would have reserved 6/4ths or 150 percent of what they owned, a mathematical impossibility. By the same token, if there were five sisters, all jointly owning the property, and each conveyed 1/4 interest, then they would have conveyed more than a hundred percent interest, again, an impossibility. In cross-examining one of Sellers, Buyers' attorney suggested that she and her sister each conveyed a quarter of the whole. However, each sister only conveyed a quarter of her interest in the undivided whole, which is not the same thing, as is next discussed.

■ ¶ 13 Second, Buyers' reasoning ignores the essence of the ownership of a joint tenancy interest. A joint interest is defined as one owned by several persons in equal shares. 60 O.S.2001 § 74. In the ancient language of the law, joint tenants were said to hold *per my et per tout*, meaning "by moiety or half and by all." *Shackelton v. Sherrard*, 1963 OK 193, ¶ 12, 385 P.2d 898, 901. In other words, a joint tenancy allows each owner to hold a particular share which he may alienate, while at the same time he and the other joint tenant hold the entire property as by a single ownership. *Id.* A joint tenancy has been variously described as undivided and concurrent, with a unity of possession, and with each interest coextensive with the others. 20 Am.Jur.2d *Cotenancy* §§ 1–3 (2011). "In the case of two joint tenants, the concept of joint tenancy with right of survivorship permits each owner to alienate and hold his share at the same time he and the other or others hold the entire property as by a single ownership. . . . Simply put, a joint tenancy results in only one interest, created by one conveyance, at the same time, and held jointly yet undivided by both tenants." *In re Estate of Metz*, 2011 OK 26, ¶ 7, 256 P.3d 45, 49 (quotation marks omitted).

1. The journal entry of judgment's caption lists only one of the defendants and the notation "et al." In the caption of this opinion, this Court has included the names of additional parties listed in the petition in error as Defendants/Appellants, including those who have acquired Sellers' mineral interests. For ease of reference, we will refer to Defendants/Appellants' arguments as those of Sellers.'

¶ 14 The "one interest" held by the sisters was owned in "equal shares." Each could convey as much of her share as she liked, but no more than that. Each sister conveyed one quarter of her "equal share." Buyers received one quarter of each "equal share." That is not the same thing as two quarters of the whole. In short, each sister here owned an undivided half of the entire estate, and each sold 1/4 of her interest.

¶ 15 Third, the cases relied on by Buyers do not support their reasoning. These are the cases cited by the trial court, *Duhig v. Peavy–Moore Lumber Co.,* 135 Tex. 503, 144 S.W.2d 878 (1940), and *Birmingham v. McCoy,* 1960 OK 183, 358 P.2d 824. In their appellate brief, Buyers have cited them mostly for general legal principles (such as a grantor cannot assert title in contradiction of his warranty) that are not dispositive of the instant case. In the interest of fairness, we have analyzed the cases fully.

¶ 16 *Duhig* "stands for the proposition that where a warranty deed is executed by a grantor who owned one-half or less of the minerals, and the same grantor then attempted to convey and retain a one-half mineral interest, the warranty deed conveys to the grantee an absolute fee simple subject only to the reservation of the one-half interest previously retained by the grantor's predecessor in title." *Young v. Vermillion,* 1999 OK CIV APP 114, ¶ 8, 992 P.2d 917, 919 (emphasis omitted). The doctrine of estoppel prevents the grantor from claiming the one-half interest he reserved, because "[t]he grantor warrants the interest he is conveying. He may not claim the deed granted less than he owned." *Id.*[2]

¶ 17 *Duhig* was cited in *Birmingham v. McCoy,* 1960 OK 183, 358 P.2d 824. In that case, Wilson, the grantor, had previously conveyed a half interest in mineral rights on land he owned. He then executed a deed with Johnson in which he reserved an undivided one-half interest in the mineral rights. Wilson's heirs claimed he had not conveyed any mineral rights, because he had reserved the half interest he owned: "This contention is predicated upon the proposition that as of date of the conveyance, Wilson, as reflected by the records of the county clerk, owned only one-half the minerals; that since he reserved one-half of the minerals none were conveyed." *Id.* at ¶ 20, 358 P.2d at 828.

¶ 18 The Supreme Court rejected this argument, relying on *Murphy v. Athans,* 1953 OK 373, 265 P.2d 461, for the principle that "where a grantor conveys land by warranty deed but excepts one-half the minerals, he is estopped to assert title to said mineral interest where one-half the minerals have been conveyed prior to his conveyance." *Birmingham* at ¶ 23, 358 P.2d at 829. In the *Murphy* case, a property owner named Shortes conveyed property to Athans but reserved a one-half oil and gas royalty; Athans later conveyed the property to Murphy but also reserved a one-half oil and gas royalty. The Court held that what Athans had reserved was the royalty interest already held by his grantor, Shortes. "The intention of the parties as evidenced by the deed from Athans to Murphy is perfectly plain: Athans was excepting from his warranty the one-half mineral interest in the 40 acres theretofore reserved by Shortes and was granting to Murphy the entire tract except that one-half interest." *Murphy* at ¶ 11, 265 P.2d at 464.

¶ 19 These cases are distinguishable on their facts. First, unlike those cases, no evidence was presented that the 3/4ths interest being "reserved" by each sister had been previously reserved by another grantor. Second, the deeds in the instant case not only made reservations of interest; they specifically stated what was being "*conveyed.*" Third, if this case involved only one seller who reserved 3/4ths and conveyed 1/4th, no one would seriously contend the seller was granting the entirety of her interest.

¶ 20 Fourth, and finally, there is nothing in the record, either in the deeds themselves or in the other evidence, that indicates Sellers meant to divest themselves of more than a quarter interest. We therefore hold that Buyers acquired a one-quarter (1/4) mineral

---

2. Though it does not affect our analysis, we note that *Young* distinguished *Duhig* because the former involved a quitclaim deed.

interest in the property and that the trial court erred.

## CONCLUSION

¶ 21 In an equitable matter, this Court may weigh the evidence and enter the judgment the trial court should have entered. *Price v. Price*, 1977 OK 205, ¶ 11, 573 P.2d 251, 253–54. Accordingly, the trial court's decision is reversed, and this cause is hereby remanded with instructions to enter judgment in favor of Defendants/Appellants.

¶ 22 REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, P.J., and BARNES, J., (sitting by designation), concur.