2016 OK CIV APP 13

### In re the MARRIAGE OF Michael A. GRESS and Linda L. KUHN:

### Michael A. Gress, Petitioner/Appellee,

### v.

### Linda L. Kuhn, Respondent/Appellant.

### No. 112,412.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 18, 2015.

Dean Hart, Jr., Hart & Hart, Pauls Valley, Oklahoma, for Petitioner/Appellee.

Robert T. Keel, Oklahoma City, Oklahoma, for Respondent/Appellant.

WM. C. HETHERINGTON, JR., Chief Judge.

¶ 1 Appellant Linda Kuhn (Wife) appeals the trial court's decree of marital dissolution which, in pertinent part, finds the couple entered into a stipulated common law marriage in October of 2005, awards Appellee Michael Gress (Husband) the farm the couple purchased when they moved to Oklahoma in 2004, values the same on the date of trial held three years after their separation, deducts from that value a credit for Husband's down payment from his separate funds, and awards Wife her share of the equity in the property subject to a lien. Based on our review of the record and applicable law, we reverse the trial court's down payment credit awarded to Husband, affirm the remaining findings, and remand the case for entry of a new judgment in accordance with this opinion.

## FACTS

¶ 2 Wife and Husband met in Pennsylvania following divorces from their respective spouses, began living together, and decided they wanted to buy property in Oklahoma and raise livestock. In 2004, they found 150 acres in McClain County with a house and purchased it for $192,500.00. Husband paid the $38,500.00 down payment using funds from the sale of his separate property. The mortgage securing the promissory note included both parties' names, and the warranty deed to the property, although noting each as "a single person," conveyed the title to the parties as joint tenants with rights of survivorship.

¶ 3 Husband remained in Oklahoma but Wife returned to Pennsylvania for a few months, returning with the parties' horses and mule. Husband worked as a truck driver and drove a hotshot rig. Wife started employment in Pauls Valley, sewing trailer and boat covers. It is undisputed Wife used approximately $20,000.00 of her separate funds to repair and remodel the house and for furniture. They obtained a $25,000.00 loan to buy farm equipment.

¶ 4 At Husband's suggestion, Wife quit her job and operated a restaurant in Stratford, Oklahoma in July 2005. When home, Husband assisted at the restaurant. In early 2006, Husband was seriously injured in a multi-car pileup in New Mexico. Due to potential litigation in that state, the parties executed a deed in March 2006, which transferred without consideration the title to the farm to Wife and was filed of record in May 2006. During the same year, Wife had a stroke, requiring care by her mother, and they had to close the restaurant.

¶ 5 Before Wife moved back to Pennsylvania in April 2009, she executed a warranty deed which transferred title to the property in her and Gress' names. Husband filed a petition for dissolution of the marriage in August 2012, alleging the parties entered into a common law marriage in McClain County on or about 2004 and seeking dissolu-

tion of the marriage based on incompatibility and abandonment. Wife filed an Answer and Counterclaim, and after Husband moved to dismiss the same, she filed an amended answer and counterclaim, denying all of the petition's allegations, specifically the alleged common law marriage. She also claimed they purchased the real property as tenants in common and requested the property be sold and the proceeds equally divided.

¶ 6 The matter was tried on September 13, 2013, at the commencement of which the parties announced their stipulation to a common law marriage. The parties each testified in their respective cases, admitted several exhibits, and then rested. The trial court took the matter under advisement.

¶ 7 On November 14, 2013, the trial court filed a Decree of Dissolution of Marriage, finding the parties entered into a common law marriage on or about October 2005, since that time have been husband and wife, and no children were born or adopted. Following its jurisdictional and venue findings, the trial court granted dissolution of the marriage to "the parties" based on incompatibility and abandonment. Husband was awarded as his separate property the parties' 150 acre property, subject to its indebtedness. Wife was awarded as her separate property, all household furniture, effects and personal property in her possession. Finding insufficient evidence of valuation of the real property upon the date of separation, he assigned the date of trial as the valuation date, which, based on Husband's testimony, the court valued at $225,000.00, with $121,510.68 owed on the note. After giving Husband "credit for $38,500.00 he paid on the real property from his separate funds," the trial court awarded alimony in lieu of property to Wife in the amount of "$32,494.66 as her share of the remaining equity in the real property. Said amount to be a lien in favor of [Wife] against said property until paid." From this Decree, Wife filed her appeal.

## STANDARD OF REVIEW

¶ 8 Wife's Brief in Chief challenges the trial court's property division, date of valuation, and failure to order the sale of their property and divide the proceeds equally. A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate. *Colclasure v. Colclasure,* 2012 OK 97, ¶ 18, 295 P.3d 1123, 1129. The trial court must follow the provisions of 43 O.S. 2006 § 121 which require a fair and equitable division of property acquired during the marriage by the joint industry of the husband and wife. *Id.* An appellate court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Id.* Appellate review of a trial court's valuation of marital assets is limited to determining if the court's findings are clearly against the weight of the evidence. *Thompson v. Thompson,* 2005 OK CIV APP 2, ¶ 18, 105 P.3d 346, 353 (citing *Bond v. Bond,* 1996 OK CIV APP 3, ¶ 8, 916 P.2d 272, 274). We address the issues argued in Wife's Brief in reverse order.[1]

## ANALYSIS

### Decree-Ordered Lien

¶ 9 Wife alleges error with the trial court's award of the farm to Husband subject to a lien of $32,494.66 without a provision for payments or a time period in which payment had to be paid, which she claims leaves her lien interest under Husband's control and domination. As authority, Wife cites *Blount v. Blount,* 1967 OK 74, 425 P.2d 474 and *Palmer v. Palmer,* 1969 OK 182, 465 P.2d 156, in both of which the trial courts' property divisions were reversed for failure to completely sever the common title in the property the spouses held as joint tenants.

¶ 10 Husband argues the trial court's division complies with 43 O.S.Supp.2012 § 121(B), which requires setting apart the title to the real property and its decree-

---

1. Exhibit C attached to Wife's Petition in Error basically lists seven issues, while her Brief in Chief contains simply three propositions of errors. "Issues raised in the Petition in Error but omitted from the brief may be deemed waived." Okla.Sup.Ct.R. 1.11(k)(1). To the extent Wife has failed to address in her Brief issues she raised in the Petition in Error, they are deemed waived.

ordered lien authorized by 43 O.S.Supp.2012 § 134(A), "secures the payment of her $32,494.66 award of alimony in lieu of property division until said sum is paid in full." He further argues "the court did not order the amount to be paid in installments, therefore the gross full amount was due and payable upon the entry of the Decree."

¶ 11 Based on Wife's authorities and subsequent precedent, we find no error. Unlike in *Blount* and *Palmer*, the trial court in this case completely severed the title to the farm property in favor of Husband. Further, according to one authority cited by the *Blount* Court, *Lawson v. Lawson*, 1956 OK 113, 295 P.2d 769, severance of title and a decree ordered lien is a property award free from the claims or domination of the other.[2] More importantly, Oklahoma case law supports the validity of a lien entered without a specific due date. In *Peters v. Peters*, 1975 OK 114, ¶ 2, 539 P.2d 26, 27, the wife sought review of a decree ordered lien that provided *"if said property is sold*, [husband] is to receive $3,625.00 which represents his equity in said home. This shall create a lien against said property in favor of the [husband]."* (Emphasis added.) Relying on *Lawson*, the *Peters* Court ultimately found no abuse of discretion based on its conclusion that:

> The title did not remain jointly in both parties as it did in *Blount* and *Lawson*. The husband was given a lien that reflected his equity in the property at the time of the divorce which would become due and payable *only at such time as the wife should choose to sell the home*. The husband was given no right to dominate the actions of the wife in relation to the sale or use of the property. (Emphasis added.) *Peters*, 1975 OK 114, ¶ 6, 539 P.2d 26.

The trial court's lien in this case, which has no order for periodic payments and no due date, permits Husband to pay Wife's alimony in lieu of property division if and when he chooses, much like the lien in *Peters*. Based on *Peters*, we find no abuse of discretion with the trial court's decree ordered lien.

### Valuation Amount and Date of Valuation

¶ 12 Wife also argues the trial court erred by accepting Husband's valuation of $225,000 when she testified her research indicated the property was worth $300,000, the cash offer the parties received in 2009 and Husband rejected. Neither party presented expert testimony appraising the real property. Wife did not contradict Husband's testimony about the poor economy and the drop of property prices in the county or the deteriorated condition of the real property. She also admitted both her absence from the area since April 2009 and failure to see the real property and its condition since that time. Her testimony of the value of the same was based on one day's research of real estate prices in the county and her opinion if she were given 30 days to fix the home the property would again be worth $300,000.00, the cash amount both parties admit was offered 2–3 months after Wife left in 2009.

¶ 13 The trial court is vested with discretion in determining the cut-off time for the valuation of marital assets, and the date of valuation is to be determined by the trial court after due consideration of all the circumstances of the case. *Colclasure v. Colclasure*, 2012 OK 97, ¶ 18, 295 P.3d 1123, 1129. The trial court is entitled to choose which testimony to believe as the judge who observes the behavior and demeanor of the witnesses. *Mueggenborg v. Walling*, 1992 OK 121, ¶ 7, 836 P.2d 112, 114. In light of the above and the meager testimony presented by both parties, we find no legal error or abuse of the trial court's discretion in setting

2. Interpreting 12 O.S. 1951 § 1278, the predecessor of 43 O.S.Supp.2012 § 121, the *Lawson* Court held:

> "To comply with the statute, the entire title with right of possession to part of the property should have been given to one and the entire title with right of possession to the remainder should have been given to the other. *Neither should have been required to account to the other for what he or she did with the property or the income derived therefrom.* If one party thereby was awarded property in excess of what the trial court thought he or she was equitably entitled to, *a lien could be established* thereon securing the payment of such sum as the court thought necessary to adjust the equities. *In other words, the property awarded to each should be free from the claims or domination of the other.*" *Id.*, 1956 OK 113, ¶ 7, 295 P.2d 769.

the valuation amount and the trial date as the date for valuing the real property.

## Credit for Separate Funds

¶ 14 Citing *Shackelton v. Sherrard*, 1963 OK 193, 385 P.2d 898, Wife alleges the trial court erred by giving Husband a credit for his $38,500 down payment because the property was placed then in joint tenancy and a gift was presumed. Husband contends Wife's cases are distinguishable because they deal with married parties acquiring property in joint tenancy and as a result, a gift of separate property was presumed. In July 2004, however, he argues the parties were not married, relying on the court's finding their common-law marriage commenced in October 2005, and claims because said marriage did not arise until a year after the real property's acquisition, the same presumption of a gift of separate property between husband and wife when property is placed in joint tenancy does not apply. Instead, Husband contends the applicable law is whether there was an *inter vivos* gift [3] and that it is clear from evidence that he had no intention to give $38,500.00 to Wife.

¶ 15 Wife's argument is supported by *Shackelton*, in which the Court held:

... where a man and woman have acquired property in joint tenancy while cohabiting as husband and wife, even under an illegal marriage, the same rule will be applied by analogy as would obtain under a valid marriage.

Under such rule it is ordinarily immaterial how much money the wife or husband has actually contributed to the purchase of the property involved because a gift from one to the other is presumed. Absent any fraud or special agreement, where the wife or husband knowingly agrees and consents to the conveyance being made to themselves as joint tenants, either is estopped to deny the tenancy of the other. 1963 OK 193, ¶ 9, 385 P.2d at 900.

Her argument is also supported by the clear weight of the evidence. Review of the trial transcript reveals Husband's testimony is totally void of any reference to fraud or a special agreement between the parties when purchasing the property. He also admitted the parties lived together for a year and incurred debts together on his credit cards prior to moving to Oklahoma, and it is undisputed on the record that they continued to cohabit as man and wife after they moved to this state. Based on *Shackelton*, the parties' unmarried status when purchasing the property in 2004 does not preclude application of the presumption of a gift to Husband's $38,500.00 down payment from his separate funds.

¶ 16 In addition, Husband admitted as a trial exhibit the parties' 2004 joint tenancy warranty deed, which expressly conveys the subject property to each party "as joint tenants and not as tenants in common with the full rights of survivorship, the whole estate to vest in the survivor in the event of death of either." The same or similar language "demonstrates the conveying party's intent," the effect of which overcomes statutory or common law presumptions of tenancies in common. *In the Matter of Estate of Metz*, 2011 OK 26, ¶ 10, 256 P.3d 45, 49. "The party seeking to rebut that presumption must present clear and convincing evidence that no gift was intended." *Bartlett v. Bartlett*, 2006 OK CIV APP 112, ¶ 7, 144 P.3d 173, 177 (citing *Chastain v. Posey*, 1983 OK 46, 665 P.2d 1179). "The Oklahoma Supreme Court has clarified this holding to require a party seeking to rebut the gift presumption to present clear and convincing evidence of a purpose for placing the property in joint tenancy which is collateral to intending a gift." *Id.*, (citing *Larman v. Larman*, 1999 OK 83, ¶ 9, 991 P.2d 536). Husband has failed to present clear and convincing evidence of a special agreement *or* of a purpose for using his separate funds and placing the subject property in joint tenancy with Wife *other than* as a gift to Wife. Consequently,

**3.** Husband cites *Cummings v. Garris*, 1961 OK 85, 362 P.2d 1106, for the following elements of a gift *inter vivos*: 1) intention to give; 2) complete delivery of the thing given; 3) acceptance by the donee. Even if we were to conclude *Shackelton* does not apply in this case, we would find Husband has failed to present evidence to overcome the intent expressed in the 2004 joint tenancy warranty deed of a gift of his separate funds.

we conclude the trial court erred in giving Husband a $38,500.00 credit and reverse that part of the decree. In all other respects, the trial court's findings addressed herein are affirmed. However, because our ruling changes Wife's share of equity in the property, the trial court's decree must be reversed and the case remanded to the trial court with instructions to enter a new decree of dissolution in accordance with this opinion.

MITCHELL, P.J., and JOPLIN, J., concur.