T.C. Summary Opinion 2016-6

UNITED STATES TAX COURT

ROBERT LEE MORRIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14679-14S.                    Filed February 3, 2016.

Robert Lee Morris, for himself.

<u>H. Elizabeth H. Downs</u>, for respondent.

SUMMARY OPINION

MORRISON, <u>Judge</u>:  This case was heard pursuant to section 7463[1] of the

Internal Revenue Code in effect when the petition was filed.  Pursuant to section

7463(b), the decision to be entered is not reviewable by any other court, and this

_____

[1]All subsequent section references are to the Internal Revenue Code in
effect for the year at issue, 2012.

opinion shall not be treated as precedent for any other case. This Court has jurisdiction pursuant to section 6213(a).

The respondent (referred to here as "the IRS") issued a notice of deficiency to the petitioner, Robert Lee Morris, for the 2012 taxable year determining an income-tax deficiency of $6,045 and an accuracy-related penalty under section 6662(a) of $1,209.

At trial, the IRS conceded the accuracy-related penalty. It also conceded that Morris could claim Regina Downing as a dependent. The issues remaining for decision are:

(1) Whether Morris was married to Regina Downing under Oklahoma common law, as of the last day of 2012. We hold that he was not.

(2) Whether Morris is entitled to dependency-exemption deductions for the 2012 tax year for (a) Downing's daughter, Thadra, and for (b) Thadra's daughter, G.[2] We hold that he is not.

(3) Whether Morris is entitled to the child tax credit and the additional child tax credit for the 2012 tax year in the amounts of $276 and $724, respectively. We hold that he is not.

---

[2]The Court refers to minor children by their initials. See Tax Ct. R. Prac. & Proc. 27(a)(3).

(4) Whether Morris's correct filing status for the 2012 tax year is head-of-household, single, or married-filing-separately. We hold that his correct filing status is single.

(5) Whether Morris is entitled to an earned income credit ("EIC") of $3,217 for the 2012 tax year. We hold that he is not.

## Background

The parties stipulated some facts, and those facts are incorporated by reference. Morris resided in Oklahoma at the time he filed the petition.

Morris began dating Regina Downing in October 2004. Neither Morris nor Downing had been married previously. In August 2007, Downing and her then-14-year-old daughter, Thadra, moved into Morris's home with Morris. Thadra is not Morris's biological or adopted child.

Morris and Downing did not file for a legal marriage certificate or participate in any type of marriage ceremony. The couple kept their finances separate. They did not jointly acquire any property, such as a house, a vehicle, or a bank account. Nor did they jointly participate in any financial transactions, such as obtaining insurance or loans. The title to Morris's house remained solely in his name. In 2009, Downing became unemployed. In 2012, Morris also became unemployed and drew unemployment benefits.

Downing was still unemployed in 2012 and did not have any income in that year. During 2012, Downing and Thadra lived in Morris's house free of charge (Thadra moved out in September 2012). Morris paid for the household food and for the utilities. Morris also provided a car for Thadra to use. Thadra, who was 18 years old at the beginning of the year, attended a local high school and worked 20 hours per week at a Save-A-Lot grocery store, where she earned the minimum wage of $7.25 per hour. She used her wages for gas and other personal expenses; she did not contribute the wages to the household.

Sometime in late 2011 Thadra became pregnant with her daughter G. Thadra received prenatal care from SoonerCare. She continued to work at Save-A-Lot until she went into labor and gave birth on June 9, 2012. Thadra went back to work one month later. She lived in Morris's house until she received federally-subsidized housing in September 2012, at which point she and G. moved out. Downing cared for G. during the day while Thadra worked. Downing continued to do this until G. entered daycare in June 2013.

Morris's 2012 federal-income-tax return was prepared by an entity called Community Action. Morris timely filed his 2012 tax return. Morris reported $20,944 in wages and $5,712 in unemployment income for a total income of $26,656. He claimed dependency-exemption deductions for Downing, Thadra,

and G., a $276 child tax credit and a $724 additional child tax credit, head-of-household filing status, and a $3,217 EIC. At Morris's request, the IRS directly deposited his $7,144 refund into two separate bank accounts.

The IRS issued a notice of deficiency to Morris on May 17, 2014. The IRS disallowed all of Morris's credits and dependency-exemption deductions. It calculated his tax using single-filing status and imposed a section 6662(a) accuracy-related penalty.

Morris timely filed a petition with the Tax Court on June 23, 2014.

The Tax Court tried the case on April 29, 2015. At trial Morris argued that he and Downing were married under Oklahoma common law and that he was, therefore, entitled to the credits and dependency-exemption deductions that he claimed on his 2012 tax return. He maintained that head-of-household was the correct filing status.

The IRS contends that Morris was not married under Oklahoma common law and that his filing status is single. The IRS concedes that Downing was Morris's dependent under section 152(d)(2)(H). The IRS also concedes the section 6662(a) penalty. At issue remain whether Morris was married under Oklahoma common law as of the end of 2012, his claim to dependency-exemption

deductions for Thadra and G., his claim to the child tax credit and the additional child tax credit, his correct filing status, and his claim to the EIC.

Discussion

1.     Common-Law Marriage in 2012

State law determines the marital status of taxpayers for federal-income-tax purposes. Von Tersch v. Commissioner, 47 T.C. 415, 419 (1967). In general, whether a taxpayer is married for federal-income-tax purposes is determined at the close of each tax year. Sec. 7703(a)(1).

A common-law marriage takes legal effect without the couple's obtaining a license and participating in a formal ceremony. Black's Law Dictionary 1118 (10th ed. 2014). The parties agree that Oklahoma recognizes common-law marriages if a couple: (1) has an actual and mutual agreement to be married, (2) has a permanent relationship, (3) has an exclusive relationship, (4) cohabit, and (5) hold themselves out publicly as spouses. Mueggenborg v. Walling, 836 P.2d 112, 113 (Okla. 1992) (citing Rath v. Maness, 470 P.2d 1011, 1013 (Okla. 1970)); Earnheart v. Earnheart, 979 P.2d 761, 763 (Okla. Civ. App. 1999). The burden of proving each of the elements by clear and convincing evidence falls on the party seeking to establish the finding of a common-law marriage. Mueggenborg, 836 P.2d at 113. Here, Morris is the party seeking to establish the finding of a

common-law marriage.  Therefore, Morris has the burden of proving the five elements by clear and convincing evidence.[3]

Clear and convincing evidence is that measure or degree of proof that will produce, in the mind of the trier of fact, a firm belief or conviction as to the truth of the allegation.  Black's Law Dictionary 674.  The clear-and-convincing-evidence standard requires more proof than the preponderance-of-the-evidence standard but less than the beyond-a-reasonable-doubt standard.  See Addington v. Texas, 441 U.S. 418, 423-24 (1979).  Both direct and circumstantial evidence may prove the existence of a common-law marriage.  Maxfield v. Maxfield, 258 P.2d 915, 921 (Okla. 1953).

---

[3]There is a general rule that the taxpayer has the burden of proof in the Tax Court.  Tax Ct. R. Prac. & Proc. 142(a).  Under this general rule, the taxpayer must prove each fact in dispute by a preponderance of the evidence.  Estate of Gilford v. Commissioner, 88 T.C. 38, 51 (1987).  The existence of a common-law marriage is determined under state law.  Von Tersch v. Commissioner, 47 T.C. 415, 419 (1967).  Oklahoma law provides its own standard of proof for the existence of a common-law marriage, i.e., the clear and convincing standard.  Besides the existence of the common-law marriage, there are other issues in the case (i.e., dependency-exemption deductions, credits, and filing status).  None of these issues depend on disputed facts.  Therefore, the allocation of the burden of proof to one party or the other, with respect to these other issues, is irrelevant.  See Payne v. Commissioner, T.C. Memo. 2003-90, 85 T.C.M. (CCH) 1073, 1077 (2003) ("Although assignment of the burden of proof is potentially relevant at the outset of any case, where * * * the Court finds that the undisputed facts favor one of the parties, the case is not determined on the basis of which party bore the burden of proof, and the assignment of burden of proof becomes irrelevant.").

The IRS does not dispute that the first four elements of Oklahoma's common-law-marriage test are present. The fifth element--whether Morris and Downing hold themselves out publicly as spouses--remains at issue.

At the trial, Morris and Downing both testified that they considered themselves married. This is the sort of public statement that could be used to demonstrate that a couple hold themselves out as spouses. However, the trial took place in 2015. The relevant question is whether Morris and Downing held themselves out as married on or before the close of the year 2012. Morris and Downing testified that for years they had introduced themselves as each other's spouses to "anybody that [they] met."

The Court does not doubt that Morris and Downing, at times, held themselves out in social circumstances as married. However, Morris provided not one iota of evidence that he and Downing held themselves out as married in any formal settings in the 2012 taxable year.

It is well established that "the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Morris repeatedly claimed that he had a "shoe box full of

paperwork" proving that he was married but declined to provide the documentation to the Court at trial. The Court offered to allow Morris to supplement the record after trial, but he declined. The Court provided Morris with every opportunity to prove his case, but he failed to do so. Because Morris failed to produce papers on which he and Downing would have stated whether they were married, we presume that on paper they had stated they were single.[4] On the basis of this presumption (and on the record in its entirety), the Court concludes that Morris has not proven by clear and convincing evidence that he and Downing held themselves out publicly as married.[5]

---

[4]Indeed, the record reflects that when Downing filed tax returns (she testified she filed tax returns through the tax year 2009), she filed as single. And Morris's 2012 tax return reflected head-of-household status, which is a status available only to unmarried people.

[5]Proof that the parties to an alleged common-law marriage had joint financial arrangements (such as insurance, joint ownership of assets, joint debt liability) can be considered in determining whether they held themselves out to the public as married. See Okla. Dep't of Mental Health & Substance Abuse v. Pierce, 283 P.3d 894, 896 (Okla. Civ. App. 2012). Morris and Downing had no such joint financial arrangements. Morris testified that this was so because he and Downing preferred to keep their finances separate. We need not consider whether this testimony is credible. Even if we believed that Morris and Downing had reason to avoid joint financial arrangements, we would not be convinced that the fifth element of Oklahoma common-law marriage is present.

Morris, therefore, did not have a valid common-law marriage under Oklahoma law in 2012.

2.      Dependency-Exemption Deductions

Section 151 allows a taxpayer to claim a personal exemption deduction for each of his or her dependents.  See sec. 151(a), (c).  Section 152(a) defines the term "dependent" to include a "qualifying child" (defined in section 152(c)) or a "qualifying relative" (defined in section 152(d)).

A "qualifying child" of the taxpayer must be:  (a) a child of the taxpayer or a descendant of such a child or (b) a brother, sister, stepbrother, or stepsister of the taxpayer, or a descendant of any such relative.  Sec. 152(c)(2).  A child for these purposes includes a stepchild or adopted child.  Sec. 152(f)(1)(A)(i), (B).  Additionally, to be a qualifying child, the person must have had the same principal place of abode as the taxpayer for more than one-half of the taxable year, must meet age requirements, must not have provided over one-half of his or her own support for the taxable year, and must not have filed a joint return with the person's spouse under section 6013 for the taxable year beginning in the calendar year in which the taxable year of the taxpayer begins.  Sec. 152(c)(1).  A person meets the age requirements under section 152(c)(1)(C) if the person is younger than the taxpayer claiming the person as a qualifying child and either (a) has not

attained the age of 19 as of the close of the calendar year in which the taxable year of the taxpayer begins or (b) is a student who has not attained the age of 24 as of the close of that calendar year.

A "qualifying relative" must be: (a) a child of the taxpayer or a descendant of such a child (for these purposes, a child includes a stepchild or adopted child, sec. 152(f)(1)(A)(i), (B)), (b) a brother, sister, stepbrother, or stepsister of the taxpayer, (c) the father or mother of the taxpayer (or ancestor of either the father or mother), (d) a stepfather or stepmother of the taxpayer, (e) a nephew or niece of the taxpayer, (f) an uncle or aunt of the taxpayer, (g) a son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law of the taxpayer, or (h) a person, other than the taxpayer's spouse, who shares a principal place of abode with the taxpayer and is a member of the taxpayer's household for the taxable year. Sec. 152(d)(2)(A)-(H). For a person to be a member of a taxpayer's household, the taxpayer must maintain the household and both the taxpayer and the person must occupy the household for the entire taxable year.[6]

_____

[6]This rule is found in sec. 1.152-1(b), Income Tax Regs., which interpreted the language of former sec. 152(a)(9). Former sec. 152(a)(9) is identical to sec. 152(d)(2)(H) of the current Code, the provision describing the eighth category of relationship that can make someone a qualified relative of the taxpayer. Working Families Tax Relief Act of 2004, Pub. L. No. 108-311, sec. 201, 118 Stat. at 1169. We continue to apply sec. 1.152-1(b), Income Tax Regs., to questions arising

(continued...)

(a)     <u>Downing</u>

At trial, the IRS conceded that Downing was a dependent of Morris

pursuant to section 152(d)(2)(H).  <u>See</u> <u>supra</u> p. 5.  Morris, therefore, may claim a

dependency-exemption deduction for Downing for the 2012 tax year.

(b)     <u>Thadra</u>

Morris argues that Thadra is his dependent because he considered her his

daughter, he provided support for her, and she lived with him through August

2012.  Because the Court finds that Morris was not married to Downing in 2012

(and therefore Thadra is not Morris's stepdaughter) and because Morris is neither

Thadra's biological nor adoptive father, Thadra is not a qualifying child.

Failure to qualify as a qualifying child does not preclude a finding that

Thadra is a qualifying relative.  However, Thadra is not related to Morris through

any of the eight categories of relationships that can make someone a qualified

relative of the taxpayer.  <u>See</u> sec. 152(d)(1)(A)-(H).  She is not in the first category

because she is not a "child" of Morris.  She is not his biological daughter, adopted

daughter, or stepdaughter.  <u>See</u> sec. 152(d)(2)(A), (f)(1)(A)(i), (B).  To be in the

eighth category, the person must live with the taxpayer for the entire taxable year.

---

[6](...continued)
under sec. 152(d)(2)(H).  <u>See, e.g.</u>, <u>Golit v. Commissioner</u>, T.C. Memo. 2013-191,
at *9 n.4.

Sec. 1.152-1(b), Income Tax Regs. According to Morris's uncontradicted testimony, Thadra lived with him only from January to September 2012. In September 2012 she moved into federally-subsidized housing. Because Thadra lived with Morris only until September 2012, she is not in the eighth category of qualifying relative. Nor does she fall within any of the other categories. She is not a qualifying relative of Morris. Therefore, Morris may not claim a dependency-exemption deduction for Thadra for the 2012 tax year.

    (c)    <u>G.</u>

Morris likewise may not claim a dependency-exemption deduction for G. G. is not a qualifying child because her mother, Thadra, is not Morris's child, i.e., his biological daughter, stepdaughter, or adopted daughter. <u>See</u> sec. 152(c)(1)(A), (2)(A), (f)(1)(A)(i), (B). Nor is G. a qualifying relative of Morris.

3.    <u>Child Tax Credit and Additional Child Tax Credit</u>

Section 24(a) allows a taxpayer a $1,000 credit against federal-income tax with respect to each "qualifying child" for which the taxpayer is allowed a deduction under section 151. Section 24(d) makes a portion of that credit--commonly referred to as the additional child tax credit--refundable. <u>See, e.g.</u>, <u>Watley v. Commissioner</u>, T.C. Memo. 2012-240, at *8. For purposes of section

24, a "qualifying child" is a qualifying child of the taxpayer, as defined in section 152(c). Sec. 24(c).

Since we conclude that Morris did not have any qualifying children for 2012, he is not entitled to the child tax credit or the additional child tax credit for 2012.

4. Filing Status

Section 1(b) provides a special tax rate for a taxpayer filing as a head-of-household. As relevant here, section 2(b)(1) defines "head of household" as an unmarried taxpayer who maintains as his home a household that, for more than one-half of the year, constitutes the principal place of abode of a dependent of the taxpayer. However, a dependent for this purpose does not include a section 152(d)(2)(H) dependent. Sec. 2(b)(1), (3)(B).

Morris filed his 2012 tax return with head-of-household status. He adamantly argues that this filing was correct for several reasons: (1) his tax preparer told him to file as head-of-household, (2) the IRS accepted his 2012 return, and (3) he claims that he filed returns for prior years with head-of-household status and that the IRS did not challenge this status.

These arguments are without merit. The mere fact that a return is prepared by a professional does not insulate the return from challenge by the IRS. See, e.g.,

Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). The IRS's initial

acceptance of a tax return does not bar later review and denial of claimed

deductions. Tonningsen v. Commissioner, 61 F.2d 199, 199-200 (9th Cir. 1932),

aff'g 22 B.T.A. 738 (1931); see also sec. 6501(a) (providing that the IRS may

assess tax for up to three years after a taxpayer files the return). Furthermore,

acquiescence by the IRS in the treatment of certain items in returns from prior

years does not prevent the IRS from examining such treatment in later years.

Union Equity Coop. Exch. v. Commissioner, 481 F.2d 812 (10th Cir. 1973), aff'g

58 T.C. 397 (1972).

Morris could not file as head-of-household because he did not have any

dependents for purposes of qualifying for head-of-household status in 2012.[7]

Downing was Morris's dependent in 2012, but only under section 152(d)(2)(H). A

person who is a dependent only under section 152(d)(2)(H) is not a dependent for

purposes of head-of-household status. Sec. 2(b)(1), (3)(B). Morris did not have

any other dependents. He was ineligible to file as head-of-household.

The remaining filing statuses are married-filing-jointly, married-filing-

separately, and single. Morris was eligible only for single filing status because, as

_____

[7]If the court found Morris to be married under Oklahoma law, he could still not have filed as head-of-household because that filing status is unavailable to married taxpayers. Sec. 2(b)(1).

we conclude, he was not married at the close of the 2012 tax year. Sec. 1(a), (d). Morris's correct filing status for the 2012 tax year is single.

5.      Earned Income Credit

Section 32(a)(1) allows an eligible taxpayer an EIC against that taxpayer's federal-income-tax liability. A taxpayer who files as single and has earned income of more than $13,980 cannot claim any amount of EIC unless the taxpayer has at least one qualifying child. Sec. 32(b)(2), (j)(1); Rev. Proc. 2011-52, sec. 3.06(1), 2011-45 I.R.B. 701, 705. "Earned income" includes wages, salaries, and other employee compensation to the extent such amounts are includible in gross income for the taxable year. Sec. 32(c)(2)(A)(i). Earned income does not include unemployment compensation. See sec. 1.32-2(c)(2), Income Tax Regs. The term "qualifying child" is defined in section 32(c)(3)(A) to mean a qualifying child of the taxpayer as defined in section 152(c) (determined without regard to whether the child provided over one-half of the qualifying child's support). See sec. 152(c)(1)(D).

Since we conclude that Morris did not have any qualifying children for the 2012 tax year and his earnings of $20,944 in wages exceed the $13,980 earned income threshold, he is not entitled to the EIC for the 2012 tax year.

In reaching our holdings, we considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Tax Court Rule of Practice and Procedure 155</u>.